613 P.2d 938

**STATE of Idaho, Plaintiff-Respondent, Cross-Appellant,**

v.

**Tommy W. FILSON, Defendant-Appellant, Cross-Respondent.**

No. 13033.

Supreme Court of Idaho.

July 14, 1980.

---

David A. Frazier, Coeur d'Alene, for defendant-appellant, cross-respondent.

David H. Leroy, Atty. Gen., Roy L. Eiguren, Deputy Atty. Gen., Boise, Nathan D. Hult, Deputy Pros. Atty., Coeur d'Alene, for plaintiff-respondent, cross-appellant.

McFADDEN, Justice.

This is an appeal by the defendant-appellant, Tommy Filson, following the denial of his motions for acquittal and new trial. He was sentenced following a jury trial to an indeterminate term not to exceed ten years each for assault with intent to commit rape and kidnapping, the terms to run consecutively.

On January 3, 1978, defendant-appellant Tommy W. Filson was charged with the crime of rape, in violation of I.C. § 18–6101, in a complaint filed in the magistrate division of the district court in the First Judicial District. A preliminary hearing was held on January 23, 1978, after which the defendant was bound over to district court to stand trial pursuant to a criminal information filed January 30, 1978, alleging rape, two counts of infamous crimes against nature (sodomy and fellatio), and kidnapping in the second degree.

On February 24, 1978, the district court heard argument on the following motions: (1) State's motion for discovery; (2) state's motion compelling samples, (3) defense's motion for medical and physical examinations of the complaining witness, (4) defense's motion for deposition of victim, and (5) defense's motion for order to dismiss. The trial court in a memorandum decision and order, denied all motions made as listed above except the motion of the state for discovery. In denying defense's motion for an order to permit medical and/or psychological examination of the prosecutrix, the court held that since there were no provisions under the criminal rules for such examination and under the civil rules, the examinee had to be a party to the action, the court did not have the authority to grant such a motion. Secondly, the court ruled that even if such authority existed, there was an insufficient showing of necessity to justify such an order.

In denying the defense's request to take the deposition of the prosecutrix, the court held that the only time that such a deposition was proper is when the witness would not be available at time of trial. The probability of her absence was insufficiently shown.

At the trial the prosecutrix testified that on the evening of December 10, 1977, she came from Spokane, Washington, to Coeur d'Alene, Idaho, with her college roommate and another friend. They went to Peabody's, a local drinking and dancing establishment. At Peabody's, the prosecutrix conversed with one Crump and the defendant, Tommy Filson. After learning that her two companions were leaving Peabody's at approximately midnight, the prosecutrix made arrangements with Crump for a ride to Sambo's restaurant to meet her companions, at approximately 2 a. m. Shortly after the companions left Peabody's, Filson drove Crump and the prosecutrix to Crump's residence in Hayden Lake, Kootenai County, Idaho.

At approximately 1:30 a. m., Filson and the prosecutrix left Crump's Hayden Lake residence. Proceeding from Hayden Lake to Coeur d'Alene, Filson left the main highway and drove his Volkswagon vehicle down a side road, after which he stopped the vehicle on the same side road. The prosecutrix testified that it took about fifteen minutes to get to this point and ten minutes to return to Coeur d'Alene, but she did not know where they were.

The prosecutrix then testified at trial that the defendant-appellant Filson started kissing her, after which she immediately pushed him away. She further testified that he fondled her breasts and ripped her slacks, all the while she was fighting, screaming, and attempting to get away from him. After biting the thumb of one of Filson's hands, she managed to open one of the vehicle's doors, and while exiting, tumbled out of the vehicle with Filson falling on top of her. However, there was no evidence of her clothing being wet or muddied.

The prosecutrix testified that she attempted to flee the area where the vehicle was parked, a rural setting with few residences in the vicinity. After slipping on the ice several times, and determining that her screams could be heard by no one but Filson, she agreed to get back in the vehicle. Upon reentering the vehicle, the prosecutrix testified that Filson, forced her to perform fellatio. She testified that Filson penetrated both her anus and vagina with his penis.

After performing the above acts, the defendant-appellant drove the prosecutrix back to Sambo's restaurant in Coeur d'Alene, the place that she had previously arranged to meet her friends. Not seeing her companion's car, Filson drove the prosecutrix to Spokane, Washington. Upon arriving at the dormitory where she resided on the campus of Whitworth College, the prosecutrix left Filson's vehicle and was let into her dormitory.

Upon entering the building, the victim went to the room of the dormitory's resident advisor. At trial, the advisor testified that the victim appeared at the door to her room sometime between 3:30 and 4:00 a. m. on the morning of December 11, 1977, in an hysterical state. She further testified that the prosecutrix's clothing was uncharacteristically mussed, the zipper to her pants was broken, and her underwear was missing. The advisor also testified that she had blood on her face, hands, and in her hair.

Two registered nurses on duty in the emergency room of Spokane's Deaconess Hospital where the prosecutrix was taken in the early morning hours of December 11, testified at trial that at that time they observed the prosecutrix to be emotionally upset and crying and that she had abrasions on her right rib cage, on her thighs and buttocks, and had reddened areas on her neck.

The lab report from the hospital revealed that no motile sperm were found in the prosecutrix in either the vaginal or anal areas. The reports were inconclusive as to the presence of seminal fluid.

Two State criminalists testified that (1) three of the four pubic hairs retrieved from the sweater the victim was wearing on the night of December 10 and the early morning of December 11 matched those taken pursuant to a search warrant from the defendant-appellant, and (2) two stains found on the victim's same sweater contained human blood stains. The appellant presented testimony that contradicted some of the prosecutrix' testimony.

The trial ended on June 2, 1978, and the jury returned verdicts finding the defendant-appellant guilty of the crimes of assault with intent to commit rape, infamous crime against nature (fellatio), infamous crime against nature (sodomy), and kidnaping, in the second degree.

Following the trial, the district court granted the appellant's motions for acquittal as to both infamous crimes against nature charges for lack of corroboration, but denied motions for acquittal and a new trial as to the convictions for assault with intent to commit rape and kidnaping in the second degree. The trial court then sentenced the

defendant-appellant to an indeterminate sentence not to exceed ten years on each count, the sentences to run consecutively.

The defendant-appellant raises four issues on appeal:

(1) Whether the trial court erred in refusing to allow him to take the deposition of the prosecutrix.

(2) Whether the trial court erred in refusing to order a psychological and physical examination of the prosecutrix.

(3) Whether there was sufficient corroborating evidence to sustain the verdict of guilty of the crime of assault with intent to commit rape.

(4) Whether there was sufficient evidence to sustain a finding that the crime occurred in Kootenai County, Idaho.

We will address each of these issues in the order presented.

█ Appellant first asserts that the trial court erred in refusing to grant his request to take the deposition of the prosecutrix. The taking of depositions in criminal matters is governed by I.C.R. 15 which provides in pertinent part:

"Depositions.—(a) WHEN TAKEN. If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court . . . may upon motion . . . order that his testimony be taken by deposition . . . . ."

From the record before this court, there is no showing whatsoever that the prosecutrix would be unable to attend the trial.[1] Without such a showing there is no grounds upon which to grant the motion and the court did not err in refusing to allow it.

The appellant's second argument is that the court erred in refusing to order a men-tal and physical examination of the prosecutrix. The appellant claimed that the court had authority under I.R.C.P. 35(a) which is applicable to criminal matters through I.C.R. 1 and 57(b). However, even if this argument has merit, I.R.C.P. 35(a) provides that:

"When the mental or physical condition . . . of a party, or of a person in the custody or under the legal control of a party, is in controversy, . . . the court . . . may order the party to submit . . . to an examination . . . . The order may be made only on a motion for good cause . . . . ."

The appellant argues that because it is the physical injury to the prosecutrix which is the essence of the case, she is essentially under the control of the prosecution in the same manner as a wife would be under the control of her husband if he sued for her injuries. In the alternative, he argues that the court has the inherent power to grant such motion. California has recognized the inherent power of the court to make such orders in criminal cases. *Ballard v. Superior Court of San Diego County,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 313 and n. 12, 410 P.2d 838, 849 and n. 12 (1966). *See,* 75 C.J.S. Rape § 80 p. 568. This court has not previously been presented with the issue of whether the trial court has such power.

In its order the court stated first that it did not have the power to order such examinations. Even if it did, there was no showing of necessity. As it is unnecessary to the resolution of this case to decide whether court had power under I.R.C.P. 35(a) or inherent power because the court declined to exercise it, we leave that question for another day when the resolution of such question may be necessary.[2]

█ We do not find that the trial court erred when it refused to order the request-

---

1. Compare I.C.R. 15 with I.R.C.P. 30(a), 30(b)(1), 30(b)(2), which provide that depositions in civil actions may be taken of any person including a party upon written notice. Leave of court is only required in a limited number of situations. I.R.C.P. 30(a), 30(b)(2). *See also,* I.R.C.P. 27(a)(1), (2), (3), 27(b).

2. We are of the view that if discovery is to be expanded beyond the provisions contained in our rules of criminal procedure, we consider it more appropriate that such change come through amendment of our existing rules of procedure, after a full study. *Buchanan v. State,* 561 P.2d 1197, 1209 (Alaska 1977).

ed examinations. We do not have the transcript of the hearing wherein the arguments of the appellant were put to the trial court. In his brief appellant argues that he needed the prosecutrix examined for the purposes of determining whether or not she was a virgin in order to attempt to discredit her testimony. The appellant was given a copy of the laboratory report of the physical examination made shortly after the incident. In this report it was stated that there was no perforation, lacerations or abrasions of the hymenal ring or of the vagina area. No motile sperm were found and the tests for seminal fluid were inconclusive. The appellant was free to use this information to question the veracity of the prosecutrix when she testified that penetration had occurred. Any further examination would not have revealed additional information not already available to the appellant. Therefore, the trial court did not err in concluding that there was an insufficient showing of need for the examination.

■ The appellant also claims that the court erred in not ordering a psychological examination of the prosecutrix. The standard adopted by a number of jurisdictions is enunciated in the case of *Ballard v. Sup. Court of San Diego County, supra,* 64 Cal.2d 159, 49 Cal.Rptr. at 313, 410 P.2d at 849:

"Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination."

*Accord: Carrado v. United States,* 210 F.2d 712, 721 (D.C.Cir.1953); *State v. Wahrlich,* 105 Ariz. 102, 459 P.2d 727, 730 (1969);

*State v. Kahinu,* 53 Haw. 536, 498 P.2d 635, 642 (1972); *State v. Clasey,* 252 Or. 22, 446 P.2d 116, 117 (1968); *State v. Klueber,* 81 S.D. 223, 132 N.W.2d 847, 850 (1965); *State v. Braxton,* 20 Wash.App. 489, 580 P.2d 1116, 1118–19 (1978). There is nothing in the record showing a compelling need for a psychological examination.[3] We do not have the facts, reasons and arguments presented to the district court by the appellant as a basis for the court to order such examination. In his motion requesting the court order, he based his request on the fact that the testimony of the prosecutrix at the preliminary hearing was improbable and upon the fact that there is an absence of corroborative evidence of the crime. (See further discussion of corroboration *infra.*) In his brief, he claims that the trial court erred in refusing his request because compelling need was shown by the fact that the polygraph test of the prosecutrix was inconclusive and the fact that Crump testified at the preliminary hearing that the prosecutrix claimed to have been raped twice before. The appellant was free to question the witness about these improbabilities and to point these out to the jury. There is an insufficient showing of compelling need in the record and we can only assume that an insufficient showing was made to the trial court as well. We do not have the transcript of either the preliminary hearing or the hearing on the motions. We cannot presume error from a silent record. *State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979). We therefore hold that the court did not err in refusing to make the order.

The appellant's third claim is that there was insufficient corroboration of the prosecutrix's testimony as to the assault to sus-

---

3. *See* Judge Jerome Frank's warning against needlessly embarking "on an amateur's voyage on the fog-enshrouded sea of psychiatry." *U. S. v. Flores-Rodriguez,* 237 F.2d 405, 412 (2d Cir. 1956). A psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly. The complaining witness should not and realistically cannot be forced to submit to a psychiatric examination or to cooperate with a psychiatrist. *Ballard v. Superior Court of San Diego County,* 64 Cal.2d 159, 49 Cal.Rptr. at 312–313, 410 P.2d at 848–49. This is why a compelling need must be shown by the appellant.

tain the verdict of guilty. Neither party contests the need for corroboration. *State v. Adair*, 99 Idaho 703, 705, 587 P.2d 1238, 1240 (1978); *State v. Elsen*, 68 Idaho 50, 187 P.2d 976 (1947); *But see* note 2, *State v. Adair, supra.*

In *Adair* this court held:

"The required corroboration need only *tend to support her testimony* that the offense was committed and make it *appear probable* that the accused was the perpetrator. Whether there is sufficient corroboration is, in the first instance, a question for the jury; and unless we can say, as a matter of law, that such evidence is insufficient we will not reverse upon that ground." (Citation omitted.) *State v. Adair*, 99 Idaho at 707, 587 P.2d at 1242.

*Accord: State v. Roberts*, 101 Idaho 199, 610 P.2d 558 (1980).

The testimony of the prosecutrix was corroborated by evidence that (1) Crump testified that the appellant admitted having intercourse with the prosecutrix, (2) the appellant had a bruised thumb which the prosecutrix claimed to have bitten; (3) the prosecutrix returned to her dorm with the zipper of her pants torn, her underwear missing, her appearance uncharacteristically mussed, and hysterical; (4) she had blood on her face, hands and hair; (5) she had bruises on her body; and (6) pubic hairs removed from the clothing of the prosecutrix when compared to the appellant's pubic hairs were found to be of the same type. It is our conclusion that based on this corroboration that the trial court did not err in refusing to grant the motion to acquit or for a new trial. *State v. Adair, supra.*

The final issue raised by appellant is his claim that there is insufficient evidence to support a finding that the alleged crime took place in Kootenai County, Idaho. The testimony was inconclusive as to the exact place where the incident arose. However, there was sufficient testimony presented from which a jury could reasonably conclude that it did take place within the Kootenai county lines. The prosecutrix testified that it took about fifteen minutes to get to the place where they stopped from Hayden Lake and no more than ten minutes to get back to Coeur d'Alene. Police officer Elliott testified that from Crump's house to the west boundary of the county (the Washington state line) was 18.3 miles on U.S. 53 and 17.3 miles via U.S. 95; to the north boundary (Bonner County) was 16.1 miles; to the east (Shoshone County) was 36.9 miles; and to the south (Benewah County) was 33.7 miles. The appellant claimed that the evidence did not establish that the incident took place in Kootenai County or in Idaho.

Where there is competent evidence to sustain the verdict, this court will not reweigh that evidence. *State v. Cotton, supra.* We conclude that there was substantial evidence from which a rational trier of the facts could have found beyond a reasonable doubt that the incident occurred in Kootenai County, Idaho, and therefore, we affirm the conviction. *Jackson v. Virginia*, 443 U.S. 307, 325, 99 S.Ct. 2781, 2792–3, 61 L.Ed.2d 560, 577 (1979).

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.