785 P.2d 654

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gary John CATES, Defendant–Appellant.**

**No. 17080.**

Court of Appeals of Idaho.

Oct. 26, 1989.

Petition for Review Denied Jan. 15, 1990.

Jarman and Tranmer, Pocatello, for defendant-appellant. A. Dean Tranmer argued.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent. Lynn E. Thomas argued.

WALTERS, Chief Judge.

Gary Cates was found guilty by a jury of aggravated battery, I.C. § 18–907, and of using a firearm in the commission of the battery, I.C. § 19–2520. He received an indeterminate six-year sentence for the battery, enhanced by an indeterminate three-year term on the firearm charge. On appeal, Cates raises the following issues. He contends the evidence was insufficient to support the jury's verdict finding him guilty of aggravated battery and guilty of using a firearm in the commission of the battery. Next, he asserts that he was deprived of a fair trial when the prosecutor— without advance disclosure to the de-

fense—made use of a presentence report prepared in another case against a companion defendant. Finally, Cates argues that the district court's sentencing discretion was abused by imposing an unreasonable sentence. We affirm.

I

We turn first to the question of the sufficiency of the evidence to support the jury's verdict. In this regard, our review is limited in scope. We will not set aside a jury verdict if there is substantial evidence upon which any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Filson,* 101 Idaho 381, 613 P.2d 938 (1980). Nor will we substitute our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). Moreover, on appeal, we view the evidence in the light most favorable to the respondent. *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Accordingly, we state the pertinent facts to be as follows.

In May, 1985, Cates and another individual, Ricky Farmer, went to a residence where a man and his teen-age fiance were living. Cates intended to confront the man with allegations regarding possible molestation of Cates' three and one-half-year-old daughter. When Cates found the man was not present, he forced his way into the apartment, seized the fiance (hereinafter "the victim") by the back of the head and instructed Farmer to bind her hands. Cates then proceeded to question the victim concerning her boyfriend's whereabouts, the time he would return, and about contact with Cates' daughter. According to the victim, at some time during this interrogation, Cates pulled out a handgun and briefly displayed it to her. Cates described the weapon to her as a "Black Powder 44" and said that he would shoot her with the weapon if she attempted to warn her boy-

friend when he returned. During the questioning, Cates became increasingly agitated and slapped the victim open handed, across her face.

Cates later blindfolded the victim and moved her from the living room to the apartment's bedroom. She was then partially undressed by Cates and retied spread-eagle across the bed. Cates proceeded, while apparently still clothed, to sit atop the victim and threaten her with rape. Cates then got up and left the bedroom. The victim testified she heard Cates instruct Farmer to keep watch for the boyfriend's possible arrival. According to the victim, Cates then returned to the bedroom. The victim heard him remove his clothes, felt him push a finger into her vagina, and then felt him engage in sexual intercourse with her. She testified that she initially resisted these physical contacts, but that Cates "kept saying, 'Would you rather die?'" After the alleged intercourse, Cates covered her with a blanket, and left the apartment with Farmer. Friends, arriving to visit, heard the victim's yells for help and released her. Shortly after, she went to the police and Cates was arrested on a charge of rape.

At trial, Cates denied the victim's allegation of rape. He eventually was found not guilty of rape but guilty of a lesser included offense of aggravated battery. As noted, the jury also found that Cates had used a firearm while committing the battery. On appeal, Cates questions the sufficiency of the evidence to support his conviction in two respects. First, he contends the evidence fails to show that any deadly weapon was used in the commission of a battery, which would elevate the crime to an aggravated battery. Next, he asserts that if a firearm was used in the incident, the state failed to prove that the weapon was "operable," as a prerequisite to permitting enhancement of a sentence under I.C. § 19–2520.

We first consider the aggravated battery issue. The elements of the crime of battery are defined in I.C. § 18–903, which provides in part:

A battery is any:

(a) Willful and unlawful use of force or violence upon the person of another; or

(b) Actual, intentional and unlawful touching or striking of another person against the will of the other; or

(c) Unlawfully and intentionally causing bodily harm to an individual.

A battery in turn can be elevated to the offense of aggravated battery under the circumstances defined in I.C. § 18–907:

A person commits aggravated battery who, in committing battery:

(a) Causes great bodily harm, permanent disability or permanent disfigurement; or

(b) Uses a deadly weapon or instrument; or

(c) Uses any vitriol, corrosive acid, or a caustic chemical of any nature; or

(d) Uses any poison or other noxious or destructive substance or liquid.

Extracting from the statutes the elements of aggravated battery which appeared applicable to the evidence introduced in this case, the trial judge instructed the jury that—in order to sustain a charge of aggravated battery—the state was required to prove beyond a reasonable doubt that the defendant wilfully, unlawfully, and intentionally used force or violence upon the victim, and, in so doing, used a deadly weapon.

■ Although Cates and his companion, Farmer, testified that Cates did not display any firearm during the battery of the victim, the victim testified to the contrary. The jury evidently chose to believe the victim on this point. The jury also implicitly concluded that the weapon was "use[d]" to commit the battery. It will be recalled that, according to the victim, Cates displayed the weapon during the interrogation in which she was slapped, and he threatened her with death during the subsequent physical encounter in the bedroom. Thus, the gun threat was not an isolated event; it had a close factual nexus to each physical incident constituting a battery. Although the weapon was not the instrument of physical contact with the victim, the jury reasonably could have found that the weap-

on was employed to intimidate the victim, causing her to endure physical contacts which she might otherwise have resisted or attempted to evade during Cates' physical contact with her. Under these circumstances, we uphold the jury's determination that deadly weapon was "use[d]" within the meaning of the aggravated battery statute.

■ Next we consider Cates' argument that the state failed to prove the firearm was operable. According to the victim, Cates expressed a threat to shoot the victim when he displayed the gun. We have held that circumstantial evidence such as an explicit threat by an individual to fire a weapon is sufficient to enable a jury to reasonably infer that the gun could be fired. *State v. Stedtfeld,* 108 Idaho 695, 701 P.2d 315 (Ct.App.1985). *See also, State v. Metzgar,* 109 Idaho 732, 710 P.2d 642 (Ct.App.1986) (review denied); *State v. Cootz,* 110 Idaho 807, 718 P.2d 1245 (Ct. App.1986) (review denied). Accordingly, we uphold the jury's implicit finding here, that the gun displayed by Cates was operable.

## II

We now turn to the issue concerning the use by the state of a presentence report prepared in another case. Cates asserts that the use of this report came as a surprise and thereby denied him a fair trial.

The use of this report came about as follows. During Cates' trial, his companion on the day in question, Ricky Farmer, was called as a rebuttal witness by the state. The prosecutor elicited from Farmer his version of the facts surrounding the incident with the victim. Farmer said he could not remember a gun being displayed. The prosecutor then asked the jury to be excused and proceeded to voir dire Farmer regarding statements Farmer previously had made to an investigator in his own case, contradicting his testimony in Cates' trial. The prosecution requested the judge to allow this evidence for two purposes—ei-

ther to impeach Farmer on the ground of prior inconsistent statements[1] or to refresh Farmer's memory. Cates objected solely on the grounds that the prior statements were unsworn, that they were unreliable, and that the presentence report in Farmer's case was a confidential document, not to be used without a prior order from the court permitting its use. *See* I.C.R. 32(h). The court overruled Cates' objection and allowed the prosecutor to question Farmer in the jury's presence.

The presentence report was not introduced into evidence as an exhibit. Instead, the prosecutor asked Farmer if he had made certain statements to "law enforcement authorities." Referring to Cates, Farmer had stated that "[Cates] had a gun in his pants and he showed it to her ... I wasn't going to do anything because he was out of his mind and he had that gun.... I wasn't going to push my luck and have him shoot me." Farmer admitted making the statements, but he also was permitted to explain why the statements were made. He testified that he had simply told the authorities what they wanted to hear—that Cates had carried a gun.

On appeal, Cates asserts that Farmer's presentence report should not have been available in light of its confidential nature, without a prior order from the court releasing it for use during Cates' trial. He also contends that the state should have been prohibited from using the report because the prosecutor had failed before trial to disclose his intent to use the report, depriving Cates of an opportunity to prepare and develop an adequate defense to the statements extracted from the report.

■ In our view, Cates' contentions are without merit. In the hearing held outside the presence of the jury, the court was informed of the nature of the report and the use intended by the state. The court entertained arguments from Cates' counsel against the use of the report. The court determined that the report should be uti-

1. I.R.E. 607 provides that the credibility of a witness may be attacked by any party, including the party calling the witness.

lized. We conclude that the court's action comported with the restrictions of I.C.R. 32(h).[2]

■ Cates' second argument, focusing on lack of pretrial disclosure, was not made to the district court. It has been made for the first time on appeal. Accordingly, our review is limited to determining whether there was "fundamental error"—that is, an error so profound that it goes to the foundation of a defendant's rights and destroys the fairness of the trial. *State v. Bingham*, 116 Idaho 415, 776 P.2d 424 (1989). We find no error of such dimension here. Although the presentence report was not identified in pretrial discovery, Farmer was listed as a potential state's witness. Cates did not follow up with any specific request for access to a presentence report. Moreover, Farmer's prior statements were inculpatory, not exculpatory, and therefore were not subject to automatic disclosure under I.C.R. 16(a) or any constitutional standard. Finally, when the prosecutor announced his intention to ask Farmer about the prior statements, Cates did not seek a continuance to review the presentence report more fully or to contact the presentence investigator. Considering all these circumstances, we conclude that the error, if any, in belated disclosure of Farmer's prior statements was not fundamental.

### III

■ We now turn to Cates' assertion that his sentence, for an aggregate indeterminate period of nine years, is excessive. Because the crime in this case was committed prior to the Unified Sentencing Act, I.C. § 19–2513 (effective February 1, 1987), our standard of review is governed entirely by *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In that case, we said that, absent a contrary statute or other indication in the record, we will treat one-third of an indeterminate sentence as the measure of confinement. Thus, for the purpose of appellate review, but not as a prediction of parole, we will treat Cates'

duration of confinement as one-third of his nine-year sentence, or three years. The question is whether confinement for at least this period of time is reasonable.

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable. Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Id.* at 568, 650 P.2d at 710. In applying the *Toohill* criteria, we conduct an independent examination of the record, focusing on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

■ The facts of the crime have been sufficiently set forth above and need not be repeated. As to Cates' character, the record shows that he has a prior felony record for possession and delivery of controlled substances, for interstate transportation of stolen property and for second degree burglary. He has an honorable discharge from military service and, prior to sentencing, remained employed on a fairly steady basis. Recognizing that Cates had "value to society," the court decided that an indeterminate, rather than a fixed, sentence should be imposed. The court concluded that Cates' actions in "terrorizing" the victim were "absolutely outrageous," and required the imposition of a prison sentence. As noted, the court settled on six years for the aggravated battery, enhanced by three years for the use of a

---

**2.** The rule provides in part: "After use in the sentencing procedure, the presentence report shall be sealed by court order, and thereafter cannot be opened without a court order authorizing release of the report or parts thereof to a specific agency or individual."

firearm. Having reviewed the full record and having considered the sentence review criteria set forth in *Toohill*, we conclude the district court did not abuse its discretion.

The judgment of conviction, including the sentence, is affirmed.

BURNETT, J., concurs.

SWANSTROM, Judge, dissenting.

I respectfully dissent to part I of this Court's opinion because I believe that Cates did not "use" a deadly weapon in the commission of the battery (the "rape" with which he was charged) within the meaning of I.C. § 18–907. In my view, the aggravated battery statute requires that the deadly weapon must be the instrumentality by which the battery is committed. The majority view, on the other hand, makes no distinction between a threat to use a deadly weapon and the actual use of a deadly weapon in committing the battery.

As noted in the majority opinion, Cates was not charged with aggravated battery. Rather, the trial judge determined that, considering the evidence produced by the state, Cates could be found guilty of the lesser included offense of aggravated battery (I.C. § 18–907) or "simple" battery (I.C. § 18–903). For reasons not apparent in the record, the jury acquitted Cates of rape but found him guilty of aggravated battery.

Aggravated battery, as the statute provides, can be committed in various ways, but under the evidence in this case the jury was instructed that in order to convict Cates of aggravated battery the state needed to prove that

the defendant willfully, and unlawfully, and intentionally used force or violence upon the person of [the victim].... [T]he defendant used a deadly weapon.

The jury was not instructed that they must find a deadly weapon was used *"in committing battery."* Nor were they told that

the "battery" meant the acts which were connected to the alleged rape. Cates did not object to this instruction. Although aggravated battery was deemed to be an included offense to the charged crime of rape, the jury was not instructed that aggravated battery could be found only from the evidence relating to the alleged rape. As a result, the jury was free to apply the aggravated battery instruction to other acts of simple battery which had preceded the "rape" and which had nothing to do with the purported rape.

The victim testified that Cates displayed the gun once shortly after the two men forced their way into the apartment. Cates threatened to shoot her if she attempted to warn her boyfriend when he returned. This threat occurred about the same time as when the victim was seized and bound in the living room. A short time later Cates slapped her because he did not like the way she was answering questions about Cates' daughter. These acts of battery occurred before the victim was taken to the bedroom. These acts had no connection with the rape. Cates was not charged with committing any battery except the rape, yet the loose aggravated battery instruction allowed the jury to conclude that Cates had "used" a firearm in committing either one of these uncharged batteries. The jury could have found Cates guilty of an "aggravated" battery which under the evidence was *not* an included offense of the crime of rape.[3] Nevertheless, my dissent is based on the evidence showing how and when the gun was "used."

My colleagues recognize that the state's evidence showed the gun was displayed to the victim only once, well before the "rape" occurred. However, they take the position—and it is not unreasonable—that once a threat is made with a gun, the threat lingers as long as the victim is confronted with the possibility that the weapon is still present and can be used by the perpetrator.

---

**3.** I do not wish to mislead the reader. Certainly Cates committed a battery upon the victim which would have been an included offense of the alleged rape. Both the victim and Cates testified that he tied the victim to the bed, un-

dressed her, and laid down on her. Also, as the majority states, the victim testified that Cates threatened her during these acts although no mention was then made of any gun.

Essentially this is the way they reason the gun was "used" in the commission of the alleged rape.

I question whether such a broad meaning of the word "use" was intended by I.C. § 18–907. The statute says:

A person commits aggravated battery who, *in committing battery:*

(a) Causes great bodily harm, permanent disability or permanent disfigurement; or

(b) *Uses* a deadly weapon or instrument; or

(c) *Uses* any vitriol, corrosive acid, or a caustic chemical of any nature; or

(d) *Uses* any poison or other noxious or destructive substance or liquid. [Emphasis added.]

I believe it is clear that the deadly weapon, instrument or chemical must actually be the instrumentality employed to commit the battery. In the case of a firearm it would be using the gun to shoot, to club, or even to physically prod the victim with the weapon. This is in contrast to the manner in which the weapon was employed by Cates. By its mere display or exhibition, the role of the handgun was limited to that of a threat to the victim. If the deadly weapon was merely displayed in making a threat— as was the situation here, to create a well-founded fear that violence was imminent— the conduct amounts to "aggravated assault" under I.C. § 18–901 and 18–905.

After the jury returned its verdict finding Cates guilty of the crime of aggravated battery the jurors were instructed to separately find whether Cates "displayed, used, threatened, or attempted to use a firearm ... while committing the crime." This finding would determine whether the court was authorized to sentence Cates "to an extended term of imprisonment." I.C. § 19–2520 (1986 Idaho Sess. Laws, ch. 319 § 2, p. 784). It is immediately apparent that, for the purposes of this statute, the Legislature believed the word "used" had the same limited meaning that was intended in the aggravated battery statute. If the Legislature believed the word "used" carried the broad meaning which the majority attributes to the word, there would be

no purpose in adding the words "displayed," "threatened" or "attempted to use" to the firearm enhancement statute.

Having been acquitted of rape Cates cannot be retried on that charge. For reasons stated I would reverse the conviction of aggravated battery. It is apparent that the evidence is sufficient to convict Cates of the included offense of aggravated assault. His threatening display of a firearm would make the sentencing enhancement statute applicable to that crime as well. *See* I.C. § 19–2520.