870 P.2d 673

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Victor VELASQUEZ–DELACRUZ, Defendant–Appellant.**

No. 20118.

Court of Appeals of Idaho.

·Feb. 22, 1994.

Petition for Review Denied April 7, 1994.

Michael J. Wood and John A. Olson, argued, Twin Falls, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Victor Velasquez–Delacruz (Velasquez) was tried before a jury and found guilty of two counts of aggravated assault and two counts of aggravated battery. *See* I.C. §§ 18–901, 18–905 (assault); 18–903, 18–907 (battery). On appeal, he challenges the court's admission of testimony and photographs depicting prior bad acts which Velasquez claims were irrelevant and prejudicial. He also argues that the district court improperly instructed the jury regarding his use of a pistol to intimidate his victims. We affirm.

### Facts and Procedural Background

Velasquez and his girlfriend, Billie Jo, shared a home with Renae Mittrucker (Renae) and Renae's boyfriend Martin Martinez–Segueda (Martin). Billie Jo had an affair with Martin's cousin and when Velasquez found out, he told Billie Jo to move from the home. Apparently, Renae and Martin knew of the affair and in an attempt to protect their friendship with Velasquez, they did not tell him right away. Later, Renae and Martin told Velasquez of the affair, which made Velasquez suspicious of their previous silence.

The night after he learned Billie Jo had been unfaithful, Velasquez met Renae and Martin in their driveway as they were about to exit their car. Velasquez had been drinking, and appeared to the victims to be drunk. Martin and Velasquez approached each other and Velasquez punched Martin several times, at first not saying anything. Velasquez then accused Martin of lying. Martin testified that Velasquez held a semi-automatic .22 caliber pistol in one hand while he hit Martin with the other. He also testified that Velasquez placed the gun barrel against Martin's stomach. Velasquez shot out two of the tires on Martin's car. He hit Martin again, then stopped to reload the pistol.

Velasquez then walked to the passenger side of the car and pulled Renae out of the car by her hair. He placed her next to Martin and shot out the car's other two tires. He reloaded the gun and returned to hit Martin again. Renae tried to walk away, but Velasquez pinned her against the car and, according to Renae, placed the barrel of the gun against her forehead. Velasquez denied using the gun in this fashion. Renae stated that she then brushed the gun away with her hand. Velasquez then ordered Renae and Martin into Velasquez's car, telling them that they were all going to drive to find Billie Jo so he could show them that he had "busted" her face and broken her teeth. Velasquez also stated that he was going to find out who was lying about the affair and that "someone is going to die." Sometime during the fracas, Velasquez told Renae and Martin that he had burned their bed, an act based on Velasquez' conclusion that the bed was used in the affair. He also stated he had shot their television.

Before everyone entered the car, the police arrived and arrested Velasquez. He was charged with aggravated battery and aggravated assault on Renae and Martin and tried before a jury, which found him guilty. The court imposed concurrent sentences, which included an enhancement for the use of a firearm. Velasquez appeals, arguing error in the admission of evidence and the jury instructions addressing aggravated battery.

### I. Evidentiary Questions

First, we address whether the court erred when it admitted evidence of prior bad acts.

Specifically, Velasquez argues that it was error for Renae to testify that during the attack, he told her he had burned her bed, shot her television, and "busted Billie Jo's face and broke all of her teeth." He also argues that the court erroneously admitted photographs of the bed and television which Velasquez had destroyed earlier on the day of the incident. He asserts that the statements and photographs were irrelevant and prejudiced the jury against him by showing his bad character. Our standard of review is as follows:

Generally, evidence of other crimes, wrongs or acts is inadmissible to show a defendant's criminal propensity or guilt of the crime charged. I.R.E. 404(b); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268 [117 L.Ed.2d 495] (1992), *and overruled on other grounds* by *State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979). However, such evidence may be admitted if offered for some purpose, other than propensity, relevant to a material issue in the case, such as the defendant's knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. *See* I.R.E. 404(b); *Pizzuto,* 119 Idaho at 750–51, 810 P.2d at 688–89. Though relevant, the evidence still may be excluded if the trial court concludes that the threat of unfair prejudice substantially outweighs its probative value. I.R.E. 403; *Pizzuto,* 119 Idaho at 750–51, 810 P.2d at 688–89. Thus, in order to admit evidence of other crimes, wrongs or acts, the trial court must first determine that the evidence is relevant to a material issue, other than propensity. If the evidence is deemed relevant, the court must, in the exercise of its discretion, determine whether the probative value of the evidence is substantially outweighed by the danger of causing unfair prejudice to the defendant. I.R.E. 403; *Pizzuto,* 119 Idaho at 750–51, 810 P.2d at 688–89.

Whether evidence is relevant presents an issue of law. *See* I.R.E. 401 *and* 402; *State v. Raudebaugh,* 124 Idaho 758, [864 P.2d 596 (1993)]; *State v. Maylett,* 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct.App.

1985) (Burnett, J., concurring). Thus, in considering a trial court's discretion to admit evidence of prior misconduct, the appellate court exercises free review of the trial judge's determination that the evidence was admissible under I.R.E. 404(b).

However, the lower court's conclusion that the probative value of the evidence is not outweighed by its unfair prejudice— the second part of the analysis under I.R.E. 403—is reviewed under an abuse of discretion standard. *State v. Rhoades,* 119 Idaho 594, 809 P.2d 455 (1991); *State v. Medrano,* 123 Idaho 114, 844 P.2d 1364 (Ct.App.1992).

*State v. Matthews,* 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct.App.1993).

## A. Admission of Statements was Proper

■ Velasquez objected to ·Renae's testimony that he stated he had burned the bed and shot the television. In response to her testimony that he stated he had "busted" Billie Jo's face and broken her teeth, Velasquez objected and moved to strike. The prosecutor argued that all of the testimony could be admitted because it was part of the threat to Renae. The court agreed and overruled the objections. Renae then expanded her intitial statement and testified that Velasquez stated:

that he had already busted Billie Jo's face and broke her teeth and that he was going to do the same thing to Martin. He told us he was going to beat Billie Jo in front of us and beat Martin in front of Billie Jo. And, he was going to find out who is lying. He said, somebody is going to die tonight.

Although Renae's statements provide evidence of Velasquez' prior bad·acts, the evidence was not offered to show Velasquez' propensity to engage in the crimes charged, but to show his motive and intent in attacking Renae and Martin. The acts and statements were clearly used by Velasquez to threaten and intimidate his victims. Velasquez admitted that he intended to scare both of them. He also admitted telling them that "someone is going to die tonight." The evidence indicates that his motive was to find

out, through threats and violence, who allegedly lied to him about Billie Jo's affair.

First, we note that a defendant who has incorporated statements about his past crimes into a criminal threat is not shielded from the use of such "other crimes" evidence. *State v. Winkler*, 112 Idaho 917, 923, 736 P.2d 1371, 11377 (Ct.App.1987). Moreover, Velasquez' statements were relevant to a material issue other than propensity. The primary question at trial was whether Velasquez intentionally used his pistol to threaten, touch, or injure Renae and Martin. Velasquez' statements, made when holding the weapon, are relevant to demonstrate the intent behind using the gun to intimidate and scare Renae and Martin. The evidence indicated that this intimidation included threatening them with the pistol, and intentionally touching them with the gun, against their will.

Further, the relevance of the evidence was not substantially outweighed by the danger of causing unfair prejudice. Velasquez' statements were integral parts of his threat to Renae and Martin. He admitted shooting and burning their personal property, hitting them, and stating "someone is going to die." In view of this evidence, we cannot say his statements, as presented by Renae, created unfair prejudice in the minds of the jurors. We conclude that the court did not err when it exercised its discretion and allowed Renae to testify regarding Velasquez' statements.

### B. Admission of Photographs was Proper

At trial, the court also allowed the state to introduce into evidence photographs of the bed and television Velasquez destroyed. Velasquez objected, and on appeal asserts that admitting the photographs improperly let the jury consider irrelevant and prejudicial prior bad acts.

We find no error. Renae's testimony that Velasquez stated he had destroyed the bed and television was admissible as evidence of motive and intent and as part of his intimidation of the victims. The photographs were clearly relevant to verify the testimony. The remaining question is whether their probative value was substantially outweighed by the danger of unfair prejudice. In this case, the evidence against Velasquez was very strong. We find it difficult to imagine that the jury would have formed any different conclusion regarding Velasquez' threats and aggression toward Renae and Martin if the photos had been excluded. Moreover, if admission of the photographs could somehow be considered erroneous, such as if they were inflammatory or cumulative evidence, the error was harmless. There was overwhelming and conclusive proof of Velasquez' guilt, leading this Court to conclude beyond a reasonable doubt that the result would not have been different had the evidence been excluded. *See State v. Baruth*, 107 Idaho 651, 658, 691 P.2d 1266, 1273 (Ct.App.1985).

### II. The Jury was Properly Instructed

Next, we address Velasquez' challenge to jury instruction 24A. When reviewing a district court's decision to give a particular jury instruction our standard of review is one of free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992); *State v. Colwell*, 124 Idaho 560, 564, 861 P.2d 1225, 1229 (Ct.App.1993). Free review requires that we determine whether the jury was properly and adequately instructed and ascertain whether the instructions, considered as a whole, fairly and adequately present the issues and state the applicable law. *Colwell*, 124 Idaho at 564, 861 P.2d at 1229. Reversible error only occurs when an instruction misleads the jury or prejudices a party. *Manning v. Twin Falls Clinic & Hospital*, 122 Idaho 47, 50–51, 830 P.2d 1185, 1188–89 (1992); *Colwell*, 124 Idaho at 564, 861 P.2d at 1229.

In pertinent part, I.C. § 18–903 defines a battery as any willful and unlawful use of force or violence upon another person, or actual, intentional and unlawful touching or striking of another person against that person's will. Aggravated battery is a battery in which the offender uses a deadly weapon or instrument. I.C. § 18–907(b). At trial, the court instructed the jury on the elements of aggravated battery and, in jury instruction 24A, stated:

You are informed that the element of aggravated battery, which requires the use of a "deadly weapon," is present when such a weapon is used to intimidate the victim, causing him or her to endure physical contacts which he or she might otherwise have resisted or attempted to evade.

Velasquez acknowledges that this instruction accurately states Idaho law as described in *State v. Cates*, 117 Idaho 90, 92–93, 785 P.2d 654, 656–57 (Ct.App.1989). He argues, however, that *Cates* should be overturned. Specifically, he asserts that the word "used," as applied in *Cates* and in jury instruction 24A is applied too broadly. He argues that "use" should not include intimidation of the victim where the weapon was allegedly used recklessly, or for "inadvertent" threats, rather than intentionally to preclude resistance by the victims.

We find Velasquez' argument to be without merit, and we decline to disturb *Cates*. In *Cates*, the defendant argued that the evidence failed to show that a firearm was used in the battery to elevate the crime to aggravated battery. We made the following statement:

> Although the weapon was not the instrument of physical contact with the victim, the jury reasonably could have found that the weapon was employed to intimidate the victim, causing her to endure physical contacts which she might otherwise have resisted or attempted to evade....

*Cates*, 117 Idaho at 92–93, 785 P.2d at 656–57. In the instant case, the record indicates that Velasquez actually, intentionally and unlawfully touched Renae and Martin with the pistol, thereby committing aggravated battery. Renae testified that Velasquez placed the barrel of the weapon on her forehead. Martin testified that Velasquez pushed the barrel of the gun into Martin's stomach. There is also conflicting evidence to indicate that Velasquez struck Martin with the gun. Further, both Renae and Martin testified that they were afraid to resist or flee because Velasquez held the gun and they were afraid of being shot. Although Velasquez stated he did not use the pistol as Renae and Martin described, there was sufficient evidence to support the verdict reflecting the contrary belief.

Based upon the evidence presented, we hold that the district court committed no error in giving instruction 24A to the jury.

### III. Conclusion

For the foregoing reasons, the judgments of conviction are affirmed.

LANSING and PERRY, JJ., concur.