52 P.3d 857

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Arvind NATH, Defendant–Appellant.**

No. 26874.

Supreme Court of Idaho,
Boise, February 2002 Term.

July 5, 2002.

Rehearing Denied Aug. 28, 2002.

Nevin, Herzfeld, Benjamin & McKay, Boise, for appellant. Dennis A. Benjamin argued.

Alan G. Lance, Attorney General, Boise, for respondent. T. Paul Krueger II argued.

SCHROEDER, Justice.

Arvid Nath (Nath) appeals the judgment of conviction for second degree attempted kidnapping entered against him following jury trial. He also appeals from the district court post-trial orders denying his motions for renewed judgment of acquittal, to dismiss and for new trial.

## I.

### FACTUAL BACKGROUND

Nath and his wife, Paige Nath (Paige) have a daughter. Almost since her birth, she has been cared for by her grandparents (Paige's parents), or by Paige's sister Virginia Yost

(Ginger) and her husband Christopher Yost (Yost).

Nath's daughter lived with the Yosts in Maryland from 1993 to 1995. In 1995 the family moved to Idaho. That same year, the Yosts obtained legal custody of the child through a Maryland court order. The order provided for visitation by Nath and Paige. The order provided that Nath's visits would be supervised by an individual approved by the Yosts or by the Idaho entity responsible for child welfare.

The Naths visited their daughter on occasion for the next couple of years. Nath had a visit scheduled on April 27, 1996. Nath did not show up for that visit. On May 3, 1996, Nath flew into Salt Lake City, rented a van and drove to Boise. The Yosts had moved since Nath's last visit, but Nath followed his daughter's bus home from school and wrote down the address. Nath called Paige and asked her to call the Yosts to ask whether he could see his daughter the following day. Ginger refused.

The next day Nath drove to the house where he saw his daughter in the front yard across the street playing. He went to her, picked her up and put her in the rented van. A neighbor went around the other side and tried to pull her back out, with Nath tugging on the other arm. Nath said he was there for visitation. After a few minutes, his daughter was let go, and she ran to the neighbors' where she hid in a car under a blanket. The neighbor had taken Nath's keys. He gave them back and Nath drove away.

Shortly thereafter, Nath flagged down a police officer. He explained the incident, stating that his intention was to take his daughter to the pool at the Holiday Inn because she liked to swim. A detective interviewed Nath as well. He advised Nath of his *Miranda* rights, which Nath waived. Nath indicated again that he was trying to exercise visitation rights. Both of those conversations were taped and introduced as exhibits. Nath was subsequently charged with one count of kidnapping in the Second Degree.

## II.

## PROCEDURAL BACKGROUND

On March 13, 1997, a jury convicted Nath of the lesser offense of Attempted Kidnapping. Sentencing was set for April 25, 1997, for which Nath did not appear. The court issued a bench warrant but did not forfeit the previously posted cash bond of $15,000. It set the bond on the bench warrant at $20,000. An attorney appeared at Nath's May 19 alternative sentencing date, stating that Nath was ill. The attorney's request for a continuance was denied, and the court did not discharge the public defender from the case. On June 20 of that year, the court ordered that $5,862.50 be taken from the $15,000 cash bond to pay for the court-ordered psychological evaluation and to reimburse the Ada County Public Defender's Office.

Nath was arrested in June of 2000. Upon return to Idaho, he retained counsel, who filed a Motion to Exonerate Cash Bond, a Motion to Dismiss (ICR 48), a Renewed Motion for Judgment of Acquittal, and a Motion for New Trial. All motions were denied. The district court sentenced Nath to a unified ten-year sentence with one year fixed and retained jurisdiction. The court eventually relinquished jurisdiction and released $8,737.09 of the $20,000 bond. Nath appealed to this Court.

## III.

## THE DISTRICT COURT SHOULD HAVE CONDUCTED AN INQUIRY OF NATH'S PRO SE MOTION TO DISCHARGE COUNSEL

Several days before trial, Nath submitted a *pro se* motion for substitute counsel to the court and to the prosecutor. In the motion he named four witnesses that his court-appointed attorney had not interviewed and also mentioned five documents that he thought the attorney should have obtained. Nath argues that the court did not make an adequate inquiry, nor did it hold a hearing regarding that motion.

Upon showing of good cause, a trial court may appoint substitute counsel for an

indigent defendant. That decision is within the discretion of the trial court. *State v. Clayton,* 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). The standard of review is an abuse of discretion standard, found when the denial of the motion results in a violation of the defendant's right to counsel. *State v. Priest,* 128 Idaho 6, 11, 909 P.2d 624, 629 (Ct.App.1995).

■ Nath submitted written statements regarding motions he wanted made, documents he wanted procured, and witnesses he thought his attorney should have deposed. In considering the motion the district court judge stated, "Mr. Nath's basic complaint as I understand it is that his counsel, Mr. Smethers, is not following his requests and instructions on which motions to file." This is an incomplete assessment of the request. Additionally, Nath was not allowed to speak on the subject. The case is very similar to *State v. Peck,* 130 Idaho 711, 946 P.2d 1351 (Ct.App.1997), in which the Court of Appeals thoroughly reviewed the standards for considering a request for substitution of counsel, noting this Court's ruling in *Clayton,* that the trial court has the obligation to afford a defendant a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel after having been made aware of the problems involved. *Id.* 713, 946 P.2d 1351. That opportunity was not given Nath in this case. He was not given the opportunity to explain his problems, and the review of his motion did not encompass the totality of his claims.

### IV.

### THE DISTRICT COURT DID NOT ERR BY DENYING NATH'S MOTION TO DISMISS BASED ON THE THEORY THAT THE YOSTS DID NOT HAVE CUSTODY ON THE DAY IN QUESTION

Nath argues that the Yosts did not have custodial rights to his daughter on May 4, 1996, on the basis that the February 23, 1995, Maryland order was not in effect on May 4, 1996, because it had been modified by the Idaho Court's September 19, 1995, Ex Parte Order Appointing Temporary Guardian.

The Idaho order appointed only Virginia (Ginger) Yost, instead of Virginia and Christopher Yost, as the child's guardian. Nath also maintains that the Idaho order deleted those portions of the Maryland order that awarded visitation by Nath and Paige. Consequently, Maryland's jurisdiction was terminated, according to Nath.

Nath also maintains that the Maryland court did not have jurisdiction to issue the March 5, 1995, Order under the Parental Kidnapping Prevention Act (PKPA), because no party resided in Maryland at the time.

Additionally, Nath asserts that the Maryland court did not have jurisdiction to issue the 1996 order limiting visitation rights under the UCCJA, I.C. § § 32–1101–1126. I.C. § 32–1103 gives the following grounds for jurisdiction: 1) if the state was the home state of the child within 6 months of the commencement of the proceeding and a parent or person acting as a parent still lives in the state, 2) at least one contestant still lives in the state, 3) the child is physically present in the state, or 4) it appears that no other state would have jurisdiction. Nath maintains that none of these existed as of 1996.

Finally, Nath argues that the Idaho court's Guardianship Order expired on March 19, 1996, and was not renewed until September 4, 1996; therefore, the Yosts did not have custody of the child on May 4, 1996. Idaho Code § 15–5–207(c) provides that the appointment of a temporary guardian lasts only six months.

The court decided that the Maryland order was lawful and entitled to full faith and credit. The State asserts that the Idaho guardianship order did not terminate the Maryland court's jurisdiction on the basis that the Idaho court order does not make the requisite findings necessary to assume jurisdiction under the UCCJA. Moreover, this Court has held that more than one state may exercise jurisdiction in a child custody case. *Biggers v. Biggers,* 103 Idaho 550, 554, 650 P.2d 692, 697 (1982). Even if the Court decides that the UCCJA is implicated, says the State, the Idaho court should not have entered the

order if a proceeding was pending in another state, citing Idaho Code § 32–1106(a) and *Paulsen v. Paulsen,* 129 Idaho 536, 928 P.2d 40 (1996). *Paulsen* holds that a state should not exercise jurisdiction if another is "substantially exercising jurisdiction" in conformity with the requirements of the UCCJA. *Id.* At that time, Maryland was "substantially exercising jurisdiction" under the UCCJA; thus, the State claims, the Idaho court erred in issuing the guardianship Order.

Finally, the State counters Nath's argument regarding the modification of the Maryland order by Idaho. The State notes that Idaho Code § 32–1115 does not allow for modifications within two years of the original decree, and this request was made less than a year after the Maryland decree.

■ The custodial history of this child is complex and difficult to decipher. An Ohio order was in effect as of 1991. The Naths asked the Yosts to take custody of the child in 1993, and at that time the Yosts applied for and gained custody of the child in Maryland. When the Yosts moved to Idaho in 1995, they applied for a temporary guardianship here. Temporary custody orders may be signed by a magistrate in order to keep a minor child in Idaho and to maintain the jurisdiction of the Idaho courts over the children. *Mills v. Mills,* 120 Idaho 635, 818 P.2d 339 (Ct.App.1991).

■ The complexity in sorting out custody in this case leads to a pivotal issue in this case. That is, did the district judge err in deciding the issue of lawful custody and in taking that issue away from the jury?

At a pretrial conference defense counsel presented the September 1995 Idaho temporary custody order as proof that the Yosts did not have legal custody. The State argued that the Yosts did have lawful custody under the Maryland orders. The judge ruled as a matter of law that the Maryland orders were valid and that the Yosts' custody "was lawful emanating from the state of Maryland and frankly ... this state would give full faith and credit."

Jury Instruction 9E instructed the jury that they need not decide whether the Yosts' custody was "lawful." Nath maintains that this violated his due process and jury trial rights that "when a court fails to instruct the jury on all material elements of a criminal offense, the defendant's rights to due process ... and to a jury trial ... are violated." *Chapman v. California,* 386 U.S. 18, 33, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Nath relies on *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), on the basis that *Apprendi* holds that the "defendant's right to due process and a jury trial was violated when the judge, not the jury, decided whether his crime of possession of a firearm was 'committed with a biased purpose.' " The question is whether taking away the element of lawful custody deprived Nath of the opportunity to have the jury decide every element of the offense beyond a reasonable doubt.

■ The standard of review for this Court when examining a court's decision to give a particular jury instruction is one of free review. *State v. Velasquez–Delacruz,* 125 Idaho 320, 323, 870 P.2d 673, 676 (Ct.App. 1994). The question is whether the jury was "properly and adequately instructed," whether the instructions on the whole present the issues fairly and adequately, and whether they state the applicable law. *Id.* Error is reversible if an instruction misleads the jury or prejudices a party. *Id.* In this case the jury was properly instructed that second degree kidnapping required an intent to keep or conceal a child "from the person having lawful care or control thereof" and that "there must exist in the mind of the perpetrator the specific intent to cause the child who is kidnapped to be unlawfully kept from persons having lawful care or control of the child." The instructions also required the state to prove every material allegation in the charge beyond a reasonable doubt.

However, the instructions then took away from the jury the question of whether the Yosts' care and control was lawful. The district court decided this issue. This deprived Nath of the due process and jury trial rights to have every material element of the charge decided by the jury. The error was

not harmless in view of the disputed nature of the custody, entangled by many years of changes and numerous orders entered by the courts of different states. Nath was deprived of the opportunity to require the state to prove the element of lawful care or control to the jury and the right to defend on the basis that he did not intend to keep the child from the person having lawful care and control of the child.

## V.

## THE DISTRICT COURT ERRED IN PART IN ITS APPLICATION OF MONEY POSTED FOR BOND

■ At the preliminary hearing in 1997 the magistrate set bond at $15,000 which Nath posted in cash. Upon conviction the district court ordered Nath to complete a psychological evaluation and to return for sentencing. Nath did complete the evaluation but did not return for sentencing. The district court issued a bench warrant and set a bond of $20,000. The original bond remained on file for possible fee reimbursement, part of which was subsequently used to pay the psychologist and to reimburse the public defender. The clerk was ordered to hold the remainder, $9,137.50, until further notice.

Nath was arrested in 2000 and he posted the $20,000 cash bond. A few days later, Nath appeared in court with counsel, and the State moved to revoke bond. The court did not revoke the bond at that time. The court did increase bond to $250,000 in cash. The court subsequently signed an order revoking the earlier bond. Nath filed a motion to exonerate the $20,000 bond. The court did not hold a hearing at that time on the motion to exonerate but ruled that the clerk hold it until further order. Nath's family provided the $250,000 bond.

At sentencing, the court imposed a $5,000 fine but reserved ruling on the amount of restitution pending Nath's return from the retained jurisdiction program. The motion to exonerate was then discussed. Counsel

for Nath requested a return of all bonds posted by Nath, totaling $285,000, less the fine and public defender reimbursement. The court exonerated the $250,000 bond but deferred ruling on the others until the rider review. Nath filed a Motion to Reconsider. The court denied the motion, and Nath filed a Petition for a Writ of Mandamus, Supreme Court No. 26963. That matter settled with the district court agreeing to release $4,000 prior to the hearing.

At the rider review hearing, the district court released jurisdiction, imposed the suspended sentence and forfeited the remainder of the $15,000 bond, and applied the $16,000 remainder of the $20,000 bond to the fine ($5,000) and restitution ($6,262.91), leaving $4,747.09.

The conditions of bail were not met in the first instance. Nath posted a $15,000 bond, and absconded. The district court then set a $20,000 bond. Upon Nath's return, the $15,000 was exonerated, but as the State alleges, the judge made it clear that bond money would be used to reimburse for court costs. Nath is correct that restitution should not have been paid, as it is not statutorily permitted. The application of the remaining funds was proper. However, the disposition of funds will have to be reconsidered on remand.

## VI.

## NATH'S ABSENCE DID NOT WAIVE HIS RIGHT TO CHALLENGE HIS CONVICTION ON APPEAL

■ The state argues that the appeal should be dismissed because Nath absconded for three years after his conviction and therefore waived his right to appeal. The State asserts that the appellate court has the discretion to dismiss the appeal of a criminal who has absconded, citing *State v. Larrea*, 130 Idaho 290, 939 P.2d 866 (Ct.App.1997). *Larrea* holds that a dismissal is "almost universal" when the defendant is still at large at the time for appellate decision. The state argues, however, that absconding from judi-

cial process at any point may be deemed grounds for dismissal.

The issue was addressed by the U.S. Supreme Court case in *Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), which determined that the defendant's fugitive status alone was not enough to warrant dismissal. In *dicta* the Court said that a long escape might delay the proceedings enough to dismiss. *Id.* at 249, 113 S.Ct. at 1208, 122 L.Ed.2d at 597.

Nath was absent for three years, substantially longer than the eleven months in *Ortega–Rodriguez.* However, a review of the extended discussions of the factors discussed in *Ortega–Rodriquez* leads to the conclusion that the appeal in this case should not be dismissed. The affront in this case was to the jurisdiction of the district court. *Id.* at 247, 113 S.Ct. at 1207, 122 L.Ed.2d at 596. That court had ample powers to remedy the wrong that occurred, including consideration of the conduct in imposing sentence. Regardless of the flight, the appellate issues remained the same. This Court can decide them as well following the flight as before.

## VII.

## CONCLUSION

The judgment of conviction and sentence is vacated and the case is remanded for new trial.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.