706 P.2d 456

**STATE of Idaho, Plaintiff-Respondent, Cross-Appellant,**

v.

**William B. CAUDILL, Defendant-Appellant, Cross-Respondent.**

No. 14727.

Supreme Court of Idaho.

March 15, 1985.

Stephen S. Hart, Idaho Falls, for defendant-appellant—cross-respondent.

Jim Jones, Atty. Gen. and Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-repondent—cross-appellant.

HUNTLEY, Justice.

Scott Bean and William Caudill were jointly tried for the October 28, 1981 murder of Neal Walker in Idaho Falls. Both were convicted of first degree murder. Bean was sentenced to a fixed term of life imprisonment, and Caudill was sentenced to an indeterminate term of life imprisonment.

## I.

### FACTS

Evidence adduced at trial established that for a time before the murder, Caudill and Bean associated with a group of individuals, at least some of whom were involved with illegal drugs. Members of the group testified to conversations among Caudill, Bean and others in which Caudill and Bean discussed their concern that the victim Walker, was a "narc" and whether he should be killed.

There was testimony to the effect that Caudill, Bean and others drove around looking for Walker with the intent to kill him on two separate occasions prior to the date of the murder.

Caudill told members of the group that he had lured Walker to Kevin Nield's apartment and that he and Bean had stabbed Walker to death. In addition to the admissions separately attributable to Caudill, he and Bean jointly described the murder to other people. Caudill and Bean acted out the murder plan for one witness shortly before the murder.

Upon Nield's return to his apartment, Bean told Nield that he and Caudill had "wasted" Walker.

Witnesses testified that Caudill showed them Walker's body in the bathtub.

In a warranted search of Nield's apartment, police and forensics investigators found a shotgun, three knives, and numerous traces of Type A blood on the gun, the walls, the floor, the mattress cover, the bathtub, tiles on the bathroom floor and on the stairwell. The gun belonged to Bean. Walker's clothing was soaked with Type A blood. Caudill also has Type A blood but had no bleeding injuries. A rug had been removed from the bedroom floor. Walker's body was found wrapped in a rug, together with articles of bloodstained clothing which fit the description of clothing Bean had been wearing earlier that day. Bean arrived at his mother's home that evening wearing someone else's pants. Caudill admitted ownership of a second pair of blood-stained pants which were found wrapped with the body.

Bean spontaneously admitted the killing at the time of his arrest.

At trial, Caudill admitted that he had induced Walker to come to the apartment and that he had been present at the time of the murder. He claimed that he had intended only to rob Walker in order to return money Walker had allegedly taken from Caudill's friends. He also asserted that he had not slashed or stabbed Walker, but had only "poked" him slightly. According to Caudill, Bean was the real killer, and he, Caudill, had been surprised when Bean stabbed Walker. Caudill testified that the witnesses against him had misinterpreted his words or were lying.

After a sentencing hearing, the district court found that the murder occurred during a robbery and was accompanied by a specific intent to kill which is an aggravating factor. The court rejected aggravating factor, I.C. § 19–2515(f)(6), (see footnote 2, infra) that the murder exhibited utter disregard for human life, because this factor required "the exclusion of all other standards."

The sentencing judge found several mitigating factors, including Caudill's youthful age, prior nonviolent nature, lack of prior criminal record, potential for rehabilitation, and remorse. The final mitigating factor found was the fact that the *victim*, together with the defendant, was engaged in the illegal delivery and use of drugs.

## II.

### ISSUES PRESENTED

Caudill appeals his conviction, alleging that the trial court erred in failing to sever

his trial from that of his co-defendant and in admitting photographs of the victim into evidence. Caudill claims that the trial court erroneously denied his motion for a change of venue and failed to properly instruct the jury. He further argues that he was denied the right of confrontation and that the evidence adduced at trial was insufficient to support the verdict. The State of Idaho cross-appeals arguing that the trial court erred in considering the victim's prior criminal conduct to be a mitigating factor and in concluding that I.C. § 19–2515(f)(6), describing an aggravating factor, was not applicable.

## III.

### THE JOINT TRIAL

We first address Caudill's contention that his joint trial with Bean constituted reversible error. Specifically, Caudill argues that he was denied his Sixth Amendment right to confront Bean whose extrajudicial confession implicating both men was admitted into evidence, that he and Bean had antagonistic defenses and that the jury could have found him guilty by association with Bean. We discuss each point in turn.

Caudill testified at the joint trial; Bean did not. One witness, an Officer Hagen, testified to a conversation which had taken place between Bean and an Officer Ericsson at the time Bean was arrested. Hagen stated, "When Ericsson asked him if he was Scott Bean, he said, 'Yes, I am.' Ericsson went to get his cuffs out and Scott Bean stated, 'I am the one you want, no trouble, I did it.'" Hagen also testified, "Mr. Bean stated, 'I have got a cut on my arm.'" When we got to the patrol car Ericsson asked him how he got the cut on his arm and he said, 'I stabbed my arm when we killed him.'" This testimony, which clearly implicated Caudill, was elicited on direct examination by Caudill's own counsel; it was not introduced by the prosecution.

As a result of the admission of this testimony, Caudill claims that he was denied the right to confront an accomplice since

Bean did not testify at the joint trial. In support of this proposition, he relies upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, in a joint trial of the petitioner and his accomplice, the prosecutor introduced the accomplice's confession into evidence through the testimony of a postal inspector. The accomplice did not testify. The confession explicitly incriminated the petitioner. He objected, claiming a denial of confrontation. The district court cautioned the jury that the confession was admissible only against the accomplice. The court of appeals affirmed. On certiorari, the Supreme Court reversed. It found a denial of the right of confrontation notwithstanding the trial court's cautionary jury instruction.

In response, the state argues that the *Bruton* rule does not apply to the admission in a joint trial of extrajudicial statements of a non-testifying co-defendant which are admissible against the defendant by the operation of some rule of evidence such as an exception to the hearsay rule. In making this assertion, however, the state paints with too broad a brush. The hearsay rule and the confrontation clause of the Sixth Amendment cannot be equated. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In *Bruton*, the Court held that, quite apart from the law of evidence, "a cautionary instruction to the jury is not an adequate protection for the defendant where the co-defendant does not take the witness stand." *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1726, 29 L.Ed.2d 222 (1971). Even were we to assume that the state's reading of *Bruton* is accurate, the record does not support the state's contention that Bean's confession would be admissible against Caudill under the co-conspirator exception to the hearsay rule which provides that where a conspiracy to commit a crime has been established, each declaration of any of the conspirators, during the pendency of the criminal enterprise, in pursuance of the original plan and with reference to the common object, is competent evidence against each of them. *See* G. Bell, Handbook of Evidence for the

Idaho Lawyer, 172–173 (2d ed. 1972); *State v. Brooks*, 103 Idaho 892, 655 P.2d 99 (1983 Ct.App.) It is not necessary that a formal charge of conspiracy be made against co-conspirators before this exception applies, but is necessary that there be some evidence of conspiracy or promise of its production before the court can admit evidence of statements made in furtherance of the conspiracy. *State v. Brooks, supra.*

We are satisfied that the prosecution established a prima facie showing of a conspiracy; however, the record does not establish that the statement here objected to was made in furtherance of the conspiracy; on the contrary, it was made after the crime had been completed and at a time when the accomplice had "come clean". Clearly, Bean was not, at the time he made his confession, attempting to further conceal the crime or to obstruct justice. Since his confession and accompanying statement implicating Caudill were not made until after the conspiracy terminated, they were not properly admitted under the co-conspirator exception to the hearsay rule.

■ Although under *Bruton* this error would appear to compel reversal, we will not reverse for the reason that one may not successfully complain of errors one has consented to or acquiesced in. In other words, invited errors are not reversible. *State v. Owsley*, 105 Idaho 836, 673 P.2d 436 (1983). In the instant case the prosecution did not introduce the extrajudicial statement or elicit the testimony to which Caudill now objects, rather Caudill's own counsel elicited the testimony. If we were to reverse this case we would in effect be inviting defense counsel to turn all joint trials into reversible trials by simply eliciting constitutionally impermissible hearsay on direct examination. This we decline to do.

■ Caudill next asserts that his defense and that of his co-defendant were irreconcilably antagonistic and thus that they should not have been tried together. Caudill's defense consisted of admitting involvement with the crime, but pointing the finger of guilt for the actual murder to Bean. Bean's defense consisted of admitting murdering Walker but denying that he had the requisite intent either because he had a mental disease or, alternatively, because his acts were not premeditated. These defenses, though differing, cannot be said to be mutually antagonistic or conflicting. Caudill also claims that he and Bean disagreed about whether to introduce or exclude certain evidence; however, he does not specify over which evidence he and Bean disagreed. Hence, his assertion is merely conclusory and does not furnish grounds for reversal.

■ Finally, Caudill argues that the denial of his motion ot sever resulted in prejudicial spillover from evidence admissible only against Bean. Parties properly joined under I.C.R. 8(b) may be severed under I.C.R. 14 if it appears that joint trial would be prejudicial, and the defendant has the burden of showing such prejudice. *State v. Cochran*, 97 Idaho 71, 539 P.2d 999 (1975). Since Caudill has not met this burden, we reject his contention that his trial was not properly joined with that of his co-defendant.

## IV.

## CHANGE OF VENUE

Caudill insists that the trial court erroneously denied his motion for a change of venue and that the court's ruling denied him a fair hearing and due process because of the extensive, contemporaneous pre-trial publicity to which prospective jurors had been exposed. We do not agree that the record established that Caudill could not receive a fair trial in Bonneville County.

■ A motion to change venue is addressed to the discretion of the trial court. *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968). Among the factors which this court will consider in determining whether a criminal defendant actually received a fair trial are affidavits indicating prejudice or absence of prejudice in the community where he or she is tried, testi-

mony of jurors at voir dire as to whether they formed an opinion of the defendant's guilt or innocence based upon adverse pre-trial publicity, whether the defendant challenged for cause any of the jurors finally selected, the nature and content of pre-trial publicity and the amount of time elapsed from the time of publicity to the trial. *State v. Needs, supra.*

■ Mere existence of any preconceived notion as to a defendant's guilt or innocence, without more, is insufficient to rebut the presumption of a prospective juror's impartiality; it is sufficient if the juror can lay aside his or her impression or opinion and render a verdict based on the evidence at trial. *State v. Needs, supra.*

■ In the instant case, none of the prospective jurors, on the court's general examination of the panel, expressed any reason why he or she could not serve impartially. Only two persons were excused for cause. The defendant did not challenge for cause any of the jurors seated. Although there was extensive pretrial publicity, it was not of an inflammatory nature. Where, as here, it appears that the defendant actually received a fair trial and that there was no difficulty experienced in selecting the jury, the trial judge's refusal to grant a change of venue is not a ground for reversal. *State v. Needs, supra.*

## V.

### TESTIMONY OF PETER BIRT AND MIKE PORTER

Caudill submits that he was denied the right to confront prosecution witnesses, Peter Birt and Mike Porter, because the prosecutor failed to endorse their names on the Information. Birt and Porter were not disclosed as possible witnesses until after the trial had started. Caudill contends that this late disclosure prejudiced his trial preparation and the presentation of his defense.

In *State of Idaho v. Olsen,* 103 Idaho 278, 647 P.2d 734 (1982) we stated that a delayed disclosure of witnesses by the prosecution is not per se reversible error. We held that where the question is one of

late disclosure of evidence or witnesses rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.

■ In *Olsen,* we indicated that where a defendant is surprised or prejudiced by the late disclosure, he or she should move for a continuance. In the instant case, the defendant did not so move. Having failed to avail himself of this procedure, he cannot be heard to complain that he was unable to adequately prepare to rebut the witnesses' testimony.

## VI.

### PHOTOGRAPHS OF THE VICTIM

Caudill alleges that the trial court erred by admitting into evidence photographs of the murder victim, since the photographs did not serve any permissible purpose but were used solely to excite and prejudice the jury.

■ The general rule is that the trial court may, in its discretion, admit into evidence photographs of the victim in a prosecution for homicide as an aid to the jury in arriving at a fair understanding of the evidence, as proof of the corpus delicti, the extent of injury, the condition and identification of the body, or for their bearing on the question of the degree or atrociousness of the crime, even though the photographs may also tend to excite the emotions of the jury. *State of Idaho v. Martinez,* 92 Idaho 183, 439 P.2d 691 (1968).

■ In the instant case, the photographs were properly admitted as tending to show the atrocious nature of the crime and to corroborate witness testimony as to Caudill's out of court statements which differed from his testimony at trial. For instance, at trial Caudill stated that he "poked" the victim while others testified that he had told them he had slashed Walker's throat. The photographs depicted an extensive wound to Walker's throat. Cau-

dill suggests that the prosecution had presented witnesses who had testified to all matters for which the photographs could be deemed relevant. The inference, presumably, is that the photographs were merely cumulative and, hence, unnecessary. However, in this case the jury was called upon to weigh the credibility of Caudill's testimony against the credibility of prosecution witnesses. Since the photographs tended to impeach Caudill's testimony and to corroborate that of the prosecution witnesses their introduction at trial was separately relevant and not simply cumulative.

## VII.

### INSTRUCTIONS

Caudill contends that the trial court erred by failing to give four requested instructions. We have considered the record, noting the contents of the denied instructions along with the court's reasons for denying them. We have also considered the instructions actually given, the arguments of counsel and the evidence presented. In light of the record, we conclude that the trial court's failure to give the requested instructions, even if erroneous, could not have affected the outcome of the trial. Hence, his failure to give the instructions would, at most, constitute harmless error.[1]

## VIII.

### SUFFICIENCY OF THE EVIDENCE

■ Caudill maintains that the evidence adduced at trial was insufficient to support his conviction for first degree murder. We disagree. The evidence reflected that Caudill entered into a plan to murder the victim; that in preparing to carry out the plan, he made weapons available at the place where the murder was to occur; that he invited the victim to the crime scene on the pretext that he wanted to deal in drugs;

that he slashed the victim's throat and stabbed him in the back; that his co-defendant repeatedly stabbed the victim and that the victim died from the wounds inflicted. Following the murder, Caudill admitted his involvement with the crime and attempted to conceal the victim's body. This evidence was more than sufficient to support his conviction.

## IX.

### ISSUES RAISED BY THE STATE

■ We next address the issues raised by the State. The State avers that the trial court erred in holding that the *victim's* prior criminal conduct, which did not amount to legal provocation for the offense, constituted a mitigating factor. We have held that the legislature's failure to list any mitigating factors in its capital sentencing scheme indicates its intent that the sentencing judge entertain the broadest of views in considering any and all matters appropriate to a determination of culpability. *State of Idaho v. Small*, 107 Idaho 504, 690 P.2d 1336 (1984). However, we conclude that consideration of the victim's character is not an appropriate matter. Hence, the trial court misconstrued the Idaho capital sentencing law in considering the *victim's* character to be a mitigating factor.

■ The State cites *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) for the proposition that the defendant may be re-sentenced so long as no new fact finding accompanies the re-sentencing. We do not agree with the State's reading of *Rumsey*. In *Rumsey*, the defendant was convicted of first-degree murder and armed robbery. The trial court found no statutory aggravating circumstances, believing that the Arizona statute defining the receipt or expectation of anything of value as an aggravating circumstance applied only to murders for

---

1. There may be cases where the failure to give a requested instruction could not have affected the outcome of the trial. If that conclusion can be drawn beyond a reasonable doubt, failure to give the instruction would be harmless error. *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).

hire, and sentenced Rumsey to life imprisonment. When Rumsey appealed his conviction, the State cross-appealed, contending that the trial court had made an error of law by limiting the statutory gain factor to the circumstance of murder committed for hire. The Arizona Supreme Court found for the State and remanded the case for resentencing. On remand the trial court held a new sentencing hearing. Neither petitioner nor respondent presented any new evidence, although they had the opportunity to do so. Upon resentencing, the trial court imposed the death penalty and Rumsey appealed. The Arizona Supreme Court reversed and Certiorari was granted. The Supreme Court, Justice O'Conner, held that the double jeopardy clause prohibited Arizona from sentencing Rumsey to death after the life sentence was set aside on appeal, notwithstanding that the trial court's failure to initially impose the death penalty was based on its misconstruction of the State's capital sentencing law. The Court's ruling was grounded in its belief that the Arizona capital sentencing proceeding was comparable to a trial for double jeopardy purposes. Referring to *Bullington v. Missouri*, 451 U.S. 430 at 438, 101 S.Ct. 1852 at 1857, 68 L.Ed.2d 270 (1981) the Rumsey Court stated, "Because the Court believed that the anxiety and ordeal suffered by a defendant in Missouri's capital sentencing proceeding are the equal of those suffered in a trial on the issue of guilt, the Court concluded that the Double Jeopardy Clause prohibits the State from resentencing the defendant to death after the sentencer has in effect acquitted the defendant of that penalty." *Rumsey* 104 S.Ct. at 2309. In *Rumsey*, the double jeopardy clause was violated *even though there was no new fact-finding*. The Court's emphasis was not, as the state suggests, on the existence or non-existence of additional fact-finding but on the anxiety the resentencing procedure would have on the convicted defendant who had previously been acquitted of the ultimate criminal

penalty. Because we conclude that resentencing at the trial level or the appellate level would violate the double jeopardy clause as explained in *Rumsey*, we will not vacate the sentence already imposed even though the trial court erroneously considered an inappropriate mitigating factor.

The State also challenges the trial court's conclusion that the murder did not exhibit an utter disregard for human life within the contemplation of I.C. § 19–2515(f)(6). The Court determined that this aggravating factor did not apply in the instant case because factor (f)(6) overlapped factor (f)(7) which had already been found to apply.

I.C. § 19–2515(f) [2] provided in part:

The following are statutory aggravating circumstances, at least one (1) of which must be found to exist beyond a reasonable doubt before a sentence of death can be imposed:

(6) By the murder, or circumstances surrounding its commission, the defendant exhibited utter disregard for human life.

(7) The murder was one defined as murder of the first degree by section 18–4003, Idaho Code, subsections (b), (c), (d), (e) or (f), *and it was accompanied with the specific intent to cause the death of a human being.* (Emphasis added.)

I.C. § 18–4003 defining degrees of murder provides, in part:

(b) Any murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder of the first degree.

(c) Any murder committed by a person under a sentence for murder of the first or second degree, including such persons on parole or probation from such sen-

---

**2.** In 1984, I.C. § 19–2515 was amended and section (f) became section (g). The language of the new section (g) and its subsections is identical to the language of the former section (f) and its subsections.

tence, shall be murder of the first degree.

(d) Any murder committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, kidnapping or mayhem is murder of the first degree.

(e) Any murder committed by a person incarcerated in a penal institution upon a person employed by the penal institution, another inmate of the institution or a visitor to the penal institution shall be murder of the first degree.

(f) Any murder committed by a person while escaping or attempting to escape from a penal institution is murder of the first degree.

In reaching its conclusion, the trial court relied on *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981). In *Osborn*, we stated:

To properly define this circumstance, it is important to note the other aggravating circumstances with which this provision overlaps. The second aggravating circumstance, I.C. § 19–2515(f)(2), that the defendant committed another murder at the time this murder was comitted [sic], obviously could show an utter disregard for human life, as could the third aggravating circumstance, I.C. § 19–2515(f)(3), that the defendant knowingly created a great risk of death to many persons. The same can be said for the fourth aggravating circumstance, I.C. § 19–2515(f)(4), that the murder was committed for remuneration. Since we will not presume that the legislative intent was to duplicate any already enumerated circumstance, thus making I.C. § 19–2515(f)(6) mere surplusage (citation omitted), we hold that the phrase "utter disregard" must be viewed in reference to acts other than those set forth in I.C. §§ 19–2515(f)(2), (3) and (4).

102 Idaho at 418–419, 631 P.2d 187.

 Thus, in *Osborn* we held only that factor (f)(6) overlapped factors (f)(2), (f)(3) and (f)(4)—not that factor (f)(6) could not be present in a case where factor (f)(7) was also applicable. Although *Osborn* did not expressly establish that factor (f)(6) also overlaps factor (f)(7), we decide today that the rationale of *Osborn* should be extended to apply to the instant case. We consider it manifest that when one acts with the specific intent to cause the death of a human being as provided for by factor (f)(7), one necessarily exhibits an utter disregard for human life as provided for by factor (f)(6).

Judgment affirmed.

DONALDSON, C.J., SHEPARD J., and BEEBE, J., pro tem., concur.

BAKES, J., concurs in the result.