193 P.3d 878

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert R. GAMBLE, Defendant–Respondent.**

**No. 33240.**

Court of Appeals of Idaho.

July 23, 2008.

Review Denied Oct. 15, 2008.

Nevin, Benjamin, McKay & Bartlett; Dennis A. Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

Robert R. Gamble appeals from his judgment of conviction for trafficking in methamphetamine, delivery of a controlled substance, trafficking in methamphetamine by manufacturing, being a persistent violator, and unlawful possession of a firearm. We affirm.

## I.

### FACTS AND PROCEDURE

On November 3, 2005, Idaho State Police Detective Elizabeth Bradbury was conducting surveillance on Gamble's residence. She watched as a dark colored pickup truck arrived at the house and a man, whom she identified as Kenneth Runkle, got out and went into the house where he remained for ten to twenty minutes. Runkle then got back into the truck, drove away, and returned about forty minutes later. He again went inside the house and came out approximately ten minutes later with a man Detective Bradbury identified as Gamble. She watched as Runkle put a white plastic grocery bag into a toolbox in the bed of the pickup and then drove away. Gamble reentered the house.

Shortly after Runkle left Gamble's house the second time, Officer Christopher Donahue, an Idaho State Trooper, stopped Runkle's truck and arrested him for driving without privileges. In searching the truck, Officer Donahue found in the toolbox the white plastic bag which contained women's clothing, a box of condoms, and a sealed plastic baby bottle liner containing a little over 27 grams of methamphetamine. Officer Donahue then questioned Runkle, who said the drugs did not belong to him and asked where they had been found. Later, Runkle asked whether there was anything he could do to make any drug charges "disappear." Cash in the amount of $1,036 was found in Runkle's pant's pocket which Runkle told the officer was the proceeds from a car he had just sold.

Contemporaneously with Runkle's arrest, a search warrant was executed at Gamble's residence where he lived with a woman. In addition to smelling the distinct odor of methamphetamine manufacture, in searching the house and the outbuildings, the officers found a colander containing approximately 200 pills, both full and empty containers of HEET (a solvent), both dry and damp coffee filters (some containing possible binder material), an empty pseudoephedrine pill bottle, acetone, red phosphorus, iodine, lye, drain opener, tubing with methamphetamine residue inside, funnels, toluene, camp fuel, and fans. They also found various drug paraphernalia, surveillance equipment, two safes, various documents including an address book listing Runkle's name, a digital scale, a box of baby bottle liner bags, drug ledgers, a heat sealer, and recipes for cooking methamphetamine. The safes contained photographs, multiple bags of methamphetamine (a total of approximately 80 grams), over $6,000 in cash and various other documents. A duffle bag containing two firearms and ammunition was also found.

Gamble was arrested and charged with trafficking in methamphetamine, Idaho Code § 37–2732B(a)(4)(A), unlawful possession of a firearm, I.C. § 18–3316, delivery of a controlled substance, I.C. 37–2732(a)(1)(A), conspiracy to deliver methamphetamine, I.C. §§ 37–2732(a)(1)(A), 18–1701, trafficking in methamphetamine by manufacturing, I.C. 37–2732B(a)(3), and being a persistent violator, I.C. § 19–2514. Shortly thereafter, the

state filed a motion for joinder, seeking to join his case with Runkle's case. Runkle had been charged with conspiracy to deliver methamphetamine and possession of methamphetamine with intent to deliver. Over the defendants' objection, the district court granted the motion.

The state then filed a notice of intent to introduce Idaho Rule of Evidence 404(b) evidence that on July 8, 2005 (four months prior to the events at issue at trial), Gamble while on a motorcycle, had unsuccessfully tried to elude police. When he was arrested, he had on his person a large amount of cash, drug ledgers, and an address book containing the name and phone number for Runkle. Notably, a letter found in Gamble's residence during the later execution of the search warrant made reference to the eluding incident. The defendants objected to the introduction of Rule 404(b) evidence, but the court allowed its admission with limited exception.

Seven days before trial, Gamble sent a note from jail to both the trial judge and his attorney, requesting substitute counsel alleging his attorney had repeatedly asked for continuances when one of Gamble's witnesses was ill and dying, had not paid attention to detail, had not subpoenaed certain witnesses for the defense, had not conducted appropriate research, had not communicated with him, and was incompetent. The day the trial commenced, the court allowed Gamble to speak to his concerns, questioned the attorney, and determined there was no basis to conclude counsel was not prepared to go to trial.

The trial proceeded and after the state rested, Gamble and Runkle moved for dismissal of the conspiracy charges on the basis that a conspiracy to deliver cannot be sustained when the only delivery is from one principal to another without any allegation that there was intent to deliver to a party besides the two principals. The court agreed and dismissed the conspiracy charges. The defendants then moved for a mistrial, citing that the Rule 404(b) evidence had been admitted only to prove a connection between the two men for the purposes of the conspiracy charge and now that those charges had been dismissed, the evidence was no longer

relevant and was highly prejudicial. The court denied the motion, but gave the jury a cautionary instruction that they should consider evidence of the July 2005 eluding incident only on the issues of "intent and knowledge."

The remaining charges, aside from the persistent violator allegation, went before the jury and the jury found Gamble guilty. The persistent violator allegation was heard by the court which found the allegation to be true, and Gamble's judgment of conviction was subsequently entered. Gamble now appeals.

## II.

## ANALYSIS

### A. Request for Substitute Counsel

Gamble argues the district court abused its discretion in denying his request for substitute counsel. In the note to the district court requesting new counsel, Gamble pointed out several reasons for the request, including that his counsel had sought multiple continuances despite the fact that one of Gamble's key witnesses (who would allegedly testify that the firearms found in the residence were not Gamble's) was dying, that counsel had not subpoenaed potential defense witnesses, and that counsel was "not paying attention to detail" or completing research and other actions necessary to prepare for trial. At the hearing on his motion, Gamble alleged that his strategy in defending against the charges differed from his counsel's and also asserted that there was a possible successful suppression motion that could have been investigated through a witness whom counsel had not contacted. Gamble's attorney responded by admitting that he had not arranged a deposition for the dying witness, nor subpoenaed her for trial, but claimed that he had repeatedly tried to contact the witness who had information regarding a possible suppression motion and had been unable to reach him. Presented with these claims, the district court denied Gamble's motion for substitute counsel, stating that it saw no evidence counsel was unprepared for trial and that the issues raised by Gamble were largely matters of trial strategy.

■ Upon being made aware of a defendant's request for substitute counsel, the trial court must afford the defendant a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel. *State v. Clayton*, 100 Idaho 896, 898, 606 P.2d 1000, 1002 (1980). With a showing of good cause, a trial court may grant such a request for an indigent defendant. I.C. § 19–856; *State v. Nath*, 137 Idaho 712, 714–15, 52 P.3d 857, 859–60 (2002). The decision to do so is within the discretion of the trial court. *Nath*, 137 Idaho at 715, 52 P.3d at 860; *Clayton*, 100 Idaho at 897, 606 P.2d at 1001. The standard of review is an abuse of discretion standard, found when denial of the motion results in a violation of the defendant's right to counsel. *Nath*, 137 Idaho at 715, 52 P.3d at 860; *State v. Priest*, 128 Idaho 6, 11, 909 P.2d 624, 629 (Ct.App.1995). Notably, the right to counsel does not necessarily mean a right to the attorney of one's choice, *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct.App.1997), and mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *State v. McCabe*, 101 Idaho 727, 729, 620 P.2d 300, 302 (1980); *Peck*, 130 Idaho at 713, 946 P.2d at 1353.

■ It his initial brief to this Court, Gamble focused solely on his contention that the lower court did not make the requisite inquiry into his request for substitute counsel.[1] However, the record shows that on the morning of trial, counsel for Gamble informed the court that Gamble was not happy with his representation, and the court gave him the opportunity to express his concerns, which he did. The court then asked Gamble's counsel about the concerns that had been raised, and following his comments, concluded that counsel was not unprepared for trial. This exchange provided Gamble with a "full and fair opportunity" to explain his reasons for wishing to discharge his public defender in compliance with *Clayton*. Accordingly, we reject Gamble's contention that the court erred in this respect.

■ In his reply brief, Gamble raises for the first time the argument that while he may have received an opportunity to be heard on his reasons for wanting substitute counsel, the court then abused its discretion in failing to allow new counsel. However, issues raised for the first time in the reply brief will ordinarily not be addressed by this Court. *State v. Killinger*, 126 Idaho 737, 740, 890 P.2d 323, 326 (1995). Therefore, we do not address this contention.

## B. Joinder

Gamble contends the district court erred in joining his case with Runkle's, an argument he made both at the hearing on the state's motion for joinder and later at the hearing on the defendants' motion for severance. Specifically, he argues that the basis for the joinder, the alleged conspiracy between the two, was improperly charged and there existed potential *Bruton*[2] problems, antagonistic defenses, and prejudice.

■ Whether joinder was proper is a question of law over which we exercise free review. *State v. Anderson*, 138 Idaho 359, 361, 63 P.3d 485, 487 (Ct.App.2003). Idaho Criminal Rule 13 allows a trial court to "order two (2) or more complaints, indictments or informations to be tried together if the offenses, and the defendants if there is more than one (1), could have been joined in a single complaint, indictment or information." Idaho Criminal Rule 8(a) provides that joinder of offenses in a single complaint, indictment or information is proper "if the offenses charged ... are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." The joinder of defendants is proper if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or of-

---

1. In the reply brief, however, Gamble appears to concede that he did receive an opportunity to express his concerns about counsel.

2. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), protects a defendant from incriminating out-of-court statements of a co-defendant being used against him in a joint trial where the co-defendant does not testify and thereby subject himself to cross-examination.

fenses." I.C.R. 8(b). Thus, offenses may be joined if there is a factual connection or if they constitute part of a common scheme or plan, and importantly, the propriety of joinder is determined by what is alleged, not what the proof eventually shows. *State v. Field*, 144 Idaho 559, 565, 165 P.3d 273, 279 (2007); *State v. Cochran*, 97 Idaho 71, 73, 539 P.2d 999, 1001 (1975); *State v. Cook*, 144 Idaho 784, 790, 171 P.3d 1282, 1288 (Ct.App. 2007).

■ Actions properly joined under I.C.R. 8(b) may be severed under I.C.R. 14 if it appears that a joint trial would be prejudicial. *Field*, 144 Idaho at 565 n. 1, 165 P.3d at 279 n. 1; *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *Cochran*, 97 Idaho at 73, 539 P.2d at 1001. The defendant has the burden of showing such prejudice. *Caudill*, 109 Idaho at 226, 706 P.2d at 460; *Cochran*, 97 Idaho at 74, 539 P.2d at 1002.

### 1. Conspiracy charge

■ Gamble's first argument in this context is that the court erred in joining his case with Runkle's because the only overlapping charge, conspiracy to deliver methamphetamine, was not charged in good faith. Specifically, he argues that the conspiracy charge was unsustainable "as two people cannot conspire with each other for one to deliver drugs to the other" and there was no evidence that the parties had conspired to deliver to a third party. The state disagrees, arguing the prosecutor had a good faith belief that the evidence would show that Gamble and Runkle were engaged in a conspiracy to distribute methamphetamine to parties other than each other.

■ It is well settled that the essential elements of conspiracy are: (1) the existence of an agreement to accomplish an illegal objective, (2) coupled with one or more overt acts in furtherance of the illegal purpose and (3) the requisite intent necessary to commit the underlying substantive offense. *State v. Munhall*, 118 Idaho 602, 606, 798 P.2d 61, 65 (Ct.App.1990). In arguing that a conspiracy between the parties did exist, the state ar-

gued there was sufficient evidence to show that Gamble and Runkle had engaged in actions meeting the elements of conspiracy. It alleged that the overt act in furtherance of the conspiracy was Gamble's delivery of nearly an ounce of methamphetamine to Runkle when Runkle was observed at Gamble's residence picking up a white plastic grocery bag—later found to contain methamphetamine—and placing it in his truck.

Gamble bases his argument that the prosecutor did not a have a good faith belief that a conspiracy case could be sustained largely on his contention, and the court's ruling, that to prove a conspiracy to deliver, there must be evidence that the parties agreed to deliver to a party other than themselves. However, as the district court noted, there existed no caselaw in Idaho at the time the prosecutor was charging the case requiring such proof.[3] Thus, we will not find that the prosecutor did not charge the crime in good faith by failing to provide evidence that the parties agreed to deliver to others where there did not exist any law in the jurisdiction making that element a requirement. Accordingly, we hold that the district court did not err in joining the cases despite the fact that the conspiracy charge was later dismissed.

### 2. *Bruton*

■ Gamble argues the court erred in joining his trial with Runkle's given there existed a potential *Bruton* problem. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), protects a defendant from incriminating out-of-court statements of a co-defendant being used against him in a joint trial where the co-defendant does not take the stand and thereby becomes subject to cross-examination. There, the Supreme Court held that in a joint trial of two defendants named Evans and Bruton, at which Evans did not testify, admission into evidence of Evans's pretrial confession which implicated Bruton constituted prejudicial error. *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479. The Court held that introduction of the confession added substantial weight to the prosecution's case

---

**3.** Recently, this Court acknowledged the issue was open in *State v. Warburton*, 145 Idaho 760, 185 P.3d 272 (Ct.App.2008), but we resolved the case without deciding the point.

in a form that was not subject to cross-examination, thereby violating Bruton's Sixth Amendment right to confrontation. *Id.* The Court further held that jury instructions given to limit application of the confession were insufficient to protect Bruton's rights. *Bruton,* 391 U.S. at 129, 88 S.Ct. at 1624, 20 L.Ed.2d at 481.

Gamble asserts that *Bruton* is applicable to this case because in his interview with Officer Donahue, Runkle claimed not to know that drugs were in the bag placed in his truck, essentially, Gamble argues, pointing the finger at Gamble as knowing the drugs were there. The officer to whom Runkle made these statements testified as follows:

Prosecutor: What did you ask Mr. Runkle [after the drugs were found in his truck]?

Officer Donahue: I asked him if the drugs belonged to him. I told him that we found what we found inside the truck and asked him if they belonged to him.

Prosecutor: And what was his response?

Officer Donahue: He denied ownership; he said they weren't his.

Prosecutor: Did Mr. Runkle ask you any questions at that point?

Officer Donahue: At one point he asked me where I'd found it. I explained to him where I found it, in the pickup bed there in that metal grated box, the toolbox.... I told him where I found it, and then he asked me if there were women's clothes in the bag. I said it appeared to be.

Prosecutor: Did Mr. Runkle ask you any other questions?

Officer Donahue: One question he did ask and I had in my report, he asked, "What can we do to make the drug charges disappear?" And I told him I wasn't in a position to make that deal.

Prosecutor: And did you overhear Detective Richards ask Mr. Runkle a question that Mr. Runkle responded to?

Officer Donahue: Detective Richards asked him to be honest with him and tell him about the drugs, and he denied ownership.

The state argues that Runkle's assertion that the drugs did not belong to him did not necessarily point the finger at Gamble as knowingly possessing the drugs. The state points out that Runkle's question asking whether "there were women's clothes in the bag" where the methamphetamine was found tended to imply that the drugs were owned by a woman. Furthermore, the state argues that Runkle's question to the officer regarding what he could do to make the drug charges "disappear" is evidence that Runkle was acknowledging at least possessing the drugs.

Gamble, however, argues that the implication behind the statements was that Gamble and not Runkle knew that the bag contained drugs. Gamble also points to the arguments made by Runkle's counsel at the initial hearing on the joinder motion where he stated that:

... There is only evidence that somehow there was methamphetamine in that bag of clothes that was placed in the bed of my client's pickup truck.

My client is of the position that he didn't know the methamphetamine was there and that that bag of clothes was a bag of clothes that Mr. Gamble had given him for my client's girlfriend, Danielle.

At the same hearing, he later argued:

There is a statement that Mr. Runkle made that said he doesn't know anything about the methamphetamine, that he only knows there were some clothes put in his truck by Mr. Gamble. I believe that is the gist of the comment that Mr. Runkle made to the police.... So we do have some of this finger pointing going on but most by Mr. Runkle saying, Hey that is not mine, it must be Mr. Gamble's.

Additionally, at the hearing on the motion to sever, Gamble's counsel argued that his client would be prejudiced "because of some *Bruton* problems, statements made by Mr. Runkle, such as, 'That was not my drugs' and 'he, Mr. Gamble, put them into my truck.'" Finally, Runkle's counsel argued to the jury during closing arguments that his client should not be convicted because there was no proof that he knew that methamphetamine was in the bag.

The cases in Idaho have addressed more direct implications of a co-defendant than exist here. In *Caudill*, 109 Idaho 222, 706 P.2d 456, Caudill and his co-defendant Bean, had stabbed a man to death at a friend's apartment. At trial, Caudill testified (while Bean did not) and admitted that he had induced the victim to come to the apartment and had been present at the time of the murder. However, he claimed he had intended only to rob the victim to return money the victim had allegedly taken from Caudill's friends. He asserted that he had not "slashed or stabbed" the victim, but had only "poked" him slightly and that Bean was the real killer. Caudill testified that he had been "surprised" when Bean stabbed the victim. When he was arrested, however, Bean had immediately admitted who he was and stated that "I am the one you want, no trouble, I did it." After the arresting officer asked how Bean had gotten a cut on his arm, Bean answered that "I stabbed my arm when *we* killed him." (Emphasis added). On appeal, Caudill argued, citing *Bruton*, that he was denied his Sixth Amendment right to confront Bean whose extrajudicial confession implicating both men was admitted into evidence. The Court held that while the officer's testimony relating what Bean had said "clearly implicated Caudill" and under *Bruton* would appear to compel reversal, the error had been invited since it was Caudill's counsel who had elicited the testimony from the officer at trial. *Caudill*, at 225–26, 706 P.2d at 459–60.

In *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985), two defendants (Beam and Scroggins) were jointly tried for murder and attempted rape using separate juries sitting in the same courtroom. Beam's girlfriend testified in front of Scroggins's jury that Beam had told her that "I think *we* killed somebody." (Emphasis added). Our Supreme Court stated that the testimony was "of course, inculpatory as to both Beam *and* Scroggins" and but for the fact that Beam had also testified before Scroggins's jury, there would have been a *Bruton* violation. *Scroggins*, at 382–83, 716 P.2d at 1154–55.

Because in this case the implication of a co-defendant was not obvious, we find it important to examine the context of *Bruton*. There, the Supreme Court recognized that in virtually every trial "inadmissible evidence creeps in, usually inadvertently." In these situations it is often reasonable to conclude that the jury can and will follow a trial judge's instructions to disregard such information, but there are "some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." The Court held that such a context was presented in *Bruton* where "the powerfully incriminating extrajudicial statements of a [non-testifying] codefendant, who [stood] accused side-by-side with the defendant, [were] deliberately spread before the jury in a joint trial." *Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1628, 20 L.Ed.2d at 485.

We conclude there was no *Bruton* problem precluding joinder in this case, as there was simply not a directly incriminating statement made, let alone a "powerfully incriminating statement" admitted. Unlike in *Caudill* and *Scroggins*, Runkle's statements and his attorney's reference to the statements at closing did not directly implicate Gamble. *See also People v. Fletcher*, 13 Cal.4th 451, 53 Cal. Rptr.2d 572, 917 P.2d 187, 189 (1996) (finding it necessary to determine whether the co-defendant's confession was incriminating of his co-defendant "in ways that were both sufficiently substantial and sufficiently direct to require its exclusion" under *Bruton* ). His statement contained essentially one defense: that he did not know drugs were contained in the bag. Importantly, however, this denial that he knew the drugs were in the bag did not necessarily implicate Gamble in knowing the drugs were present in the bag. In other words, knowledge of the drugs in this case was not an "either/or" proposition. Even if Runkle did not know about the drugs as he claims, it can also be argued that Gamble did not know either; Runkle's denial did nothing to dispel this possibility. Thus, we conclude that the court did not err in joining the cases as a *Bruton* violation was not present.

### 3. Antagonistic defenses

■ Gamble also contends joinder was inappropriate given that antagonistic defenses existed between the parties. Runkle's primary defense was that he did not know the bag in his truck contained methamphetamine and that he did not have the intent to distribute it. Gamble, as opposed to denying his involvement in drug activity, essentially defended himself by questioning the state's proof that he had committed the crimes for which he was charged. In regard to trafficking by possession, he admitted that more than 28 grams of methamphetamine were found in a safe in his bedroom. In regard to the gun charge, he argued that he knew the guns were there, but that they were not his and he had no control over them. And in regard to the manufacturing charge, he argued that the evidence was only sufficient to show attempt to manufacture and the state had not proven that a completed "cook" had occurred there.

Notably, Gamble's defense did not include the assertion that Runkle knew about the drugs, which would have made it antagonistic to Runkle's defense. *See Caudill*, 109 Idaho at 226, 706 P.2d at 460 (finding defenses were not antagonistic where Defendant A admitted to involvement in the crime, but pointed the finger of guilt for the actual murder to Defendant B, who admitted to killing the victim, but denying that he had the requisite intent, or in the alternative, his acts were not premeditated). Accordingly, we conclude the court did not err as antagonistic defenses did not exist to make joinder inappropriate.

### C. Motion for Mistrial

■ Gamble also argues the district court erred in denying his motion for a mistrial because the basis for joinder—the conspiracy charge—was dismissed and he was prejudiced because the dismissed charge was the only basis for the admission of what he terms "highly prejudicial" (and now irrelevant) Rule 404(b) evidence of Gamble's earlier attempt to elude police.[4]

■ In regard to the fact that the "binding" charge of conspiracy was dismissed, we note that that fact alone is not a basis for mistrial. *Cochran*, 97 Idaho at 73, 539 P.2d at 1001. Rather, a conviction will not be reversed for failure to sever unless prejudice is shown. *Id.* Here, Gamble's assertion of prejudice centers almost exclusively around the admission of Rule 404(b) evidence that the court had found was relevant to the conspiracy charge, but continued to allow the jury to consider for "knowledge and intent" even after the conspiracy charge was dismissed.

In seeking to have the evidence introduced, the state argued that in addition to being relevant to the conspiracy, evidence of the eluding incident was relevant to prove Gamble's custody, control, and possession of the drugs, guns, and paraphernalia found in his residence since a letter was found in his home—with his first name on it—referencing the eluding incident. After a hearing, the court held that evidence of the eluding, money, drug ledgers, and address book and telephone numbers was admissible and their probative value was not outweighed by unfair prejudice.

The evidence at issue was presented to the jury as follows: After an admonition by the court that the testimony should be considered only for the purpose of "deciding issues related to specific intent and to the relationship, if any, between the two defendants," Officer Duncan Hedges testified that on July 8, 2005, he had witnessed Gamble on his motorcycle commit a traffic violation and had put his sirens and overhead lights on to pull him over. Gamble did not stop and a chase ensued. When the motorcycle finally came to a stop about four and one-half miles later and the officer pulled up next to it and began to exit his vehicle, Gamble "lunged" towards him, pushing him back into the car and ran away. Gamble was eventually apprehended and brought back to the scene where the fanny pack that he was wearing was removed. A search of the pack revealed sever-

---

4. The state appears to argue that this issue was not preserved. However, after the state rested at trial, both defendants moved for a mistrial on the ground that they had been prejudiced by admis-

sion of Rule 404(b) evidence based on the conspiracy charge that had since been dismissed. The district court denied the motion. Accordingly the issue is preserved.

al wallets containing a total of $8,691 in cash, as well as an address book containing the name "Ken R." with a phone number next to it, some pieces of paper with writing on them, and what the officer determined to be a drug ledger. The name "Skinacles" appeared on the ledger.

After the conspiracy charge was dismissed, and the court denied the defendants' motion for a mistrial, it also declined—after a request from the defendants—to instruct the jury not to take Rule 404(b) evidence into consideration. It did, however, issue a cautionary instruction as follows: "You have heard evidence of an incident occurring in July 2005. This evidence, if believed, may be considered by you only on the issue of intent and knowledge. The evidence may not be considered for any other purpose." The state agrees with the lower court's approach, arguing on appeal that even if his case had not been joined with Runkle's and conspiracy had not been charged, evidence of Gamble's attempt to elude police would be admissible to show his "knowledge of his unlawful conduct." Specifically, the state asserts that his possession of more than $8,500 in cash, an address book with Runkle's name and number contained within, and drug ledgers with Runkle's nickname, "Skinacles," and amounts owed were all evidence his "knowledge of and intent to distribute drugs." The state argues that in light of the evidence found on Gamble's premises—additional drug ledgers, large quantities of cash in Gamble's safe, firearms, and equipment and materials used for the manufacture of methamphetamine—the Rule 404(b) evidence was "plainly relevant to knowledge and intent."

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. This rule provides in part that "[a] mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." In *State v. Barcella*, 135 Idaho 191, 16 P.3d 288 (Ct.App.2000), we explained the well-established standard for review of a refusal to grant a mistrial:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the 'abuse of discretion' standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*Barcella*, 135 Idaho at 197, 16 P.3d at 294 (quoting *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct.App.1993)). *See also State v. Morgan*, 144 Idaho 861, 863, 172 P.3d 1136, 1138 (Ct.App.2007); *State v. Atkinson*, 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App.1993); *State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983). The error will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there was no reasonable possibility that the event complained of contributed to the conviction. *Morgan*, 144 Idaho at 863, 172 P.3d at 1138; *Shepherd*, 124 Idaho at 58, 855 P.2d at 895.

Rule 404(b) disallows the admission of evidence of other crimes, wrongs, or acts to prove a defendant's criminal propensity.[5] *See State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct.App. 1987). However, such evidence may be ad-

---

**5.** Idaho Rule of Evidence 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

missible for a purpose other than that prohibited by the rule, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake. I.R.E. 404(b); *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App.2002).

We need not address whether its admission constituted error, however, because we conclude that even if the evidence was not relevant to an issue other than propensity in regard to the remaining charges, admission was harmless error given the extensive and convincing evidence of Gamble's guilt even without consideration of the eluding incident. Detective Bradbury testified that when conducting surveillance of Gamble's residence on November 3, 2005, she saw Runkle enter Gamble's residence (he later admitted to living there) and then exit with Gamble. She testified that she watched Runkle put a white plastic bag into the toolbox of his truck and drive away. Shortly after leaving Gamble's house, Runkle was stopped and the officer found 28 grams of methamphetamine in the white plastic bag. Contemporaneously with Runkle's arrest after the stop, a search warrant was executed at Gamble's residence. A search of the house and its outbuildings uncovered a large supply of ingredients and equipment commonly used in manufacturing methamphetamine. In addition, authorities found assorted drug paraphernalia (some containing methamphetamine residue), surveillance equipment, two safes—both in Gamble's room—a digital scale, a box of baby bottle liner bags (like that in which the methamphetamine was found in the plastic bag in Runkle's truck), drug ledgers, a heat sealer, recipes for cooking methamphetamine, and various documents, including an address book containing Runkle's name and letters addressed to Gamble. Inside the safe were photos from Gamble's personal life, multiple bags (of the same type containing the methamphetamine found in Runkle's truck) containing 85 grams of methamphetamine, $6,350 in cash, and other documents. Finally, the police located a duffle bag containing two firearms and ammunition inside. More methamphetamine was also found outside the safe in different locations in Gamble's bedroom.

Detective Bradbury testified that she believed methamphetamine was actually being manufactured when the police arrived to execute the search warrant. She further testified to her opinion that methamphetamine had been successfully "cooked" there in the past, due to the presence of methamphetamine in some of the tubes discovered in the house.

In addition, not only was the evidence overwhelming that Gamble respectively possessed, manufactured and delivered methamphetamine, Gamble presented virtually no plausible defense. Concerning the manufacturing charge, he argued, not that the state did not prove that he knew it was methamphetamine that he was producing, but that the state had not proven that a methamphetamine "cook" had actually been completed in the residence. In regard to the trafficking by possession charge, he simply stated in closing arguments that there was no direct evidence of how the methamphetamine had gotten into his room. In fact, his attorney admitted in closing argument that "[t]hat is probably the strongest case the state has is the presence of [methamphetamine] in [Gamble's] room." Finally, concerning the delivery charge, Gamble never made the argument that the state did not prove he knew the substance in the bag was methamphetamine or that he knew the substance was there in the first place-he simply argued to the jury that there was no direct evidence of the delivery.

For the reasons stated above we find the court did not err in refusing to grant a mistrial after dismissing the conspiracy charges.

### D. Judicial Misconduct

▌ Gamble argues that at the conclusion of Detective Bradbury's testimony, the judge improperly commented on Detective Bradbury's credibility, thus committing reversible error. The exchange to which Gamble refers occurred as follows:

The Court: Okay. My turn.

Detective Bradbury: Okay.

The Court: Isn't it a fact, Detective Bradbury, that as a teenage state trooper you were in the habit of citing inoffensive

judges for driving just a little bit too fast on Lewiston Hill?

Detective Bradbury: That's correct, Your Honor.

The Court: You can step down.

Detective Bradbury: Thank you.

The Court: I have no further questions.

Detective Bradbury: Thank you.

The Court: And I was going too fast.

██ Initially, the state argues that the issue is not preserved, because Gamble did not object to the judge's comments. It is true that Gamble did not object and where a defendant fails to voice such an objection at trial, this Court will only review a judge's questioning for fundamental error. *State v. Lovelass*, 133 Idaho 160, 165, 983 P.2d 233, 238 (Ct.App.1999). Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994).

██ Several times, this Court has elucidated the permissible scope of judicial questioning pursuant to Idaho Rule of Evidence 614. *See Lovelass*, 133 Idaho at 165, 983 P.2d at 238; *Milton v. State*, 126 Idaho 638, 642, 888 P.2d 812, 816 (Ct.App.1995). It is integral that such questioning cannot express approbation for or prejudice toward one party. *Id.* A court's questioning is necessarily limited to clarification of evidence, controlling the presentation of evidence, the prevention of undue repetition of testimony, and to limit counsel to evidentiary rulings. *Id.*

Here, we are not convinced the trial judge's comments were so egregious as to threaten the very foundation of Gamble's case. We do recognize that such an interaction may have the effect of "aligning" the judge with one side in the eyes of the jury, but given the brevity and relatively benign content of the exchange, we cannot say that Gamble was denied a fair trial as a result. Contrary to what Gamble asserts, the statements were somewhat cryptic and did not evidence an explicit "high opinion" of Detective Bradbury. We also do not think the content of the conversation bolstered Detective Bradbury's testimony in any appreciable way-she had testified in great detail, with corroboration from other officers and evidence presented by the state and without contradiction from Gamble, as to Gamble's interaction with Runkle where Runkle ended up with a bag containing methamphetamine in his truck, and then later as to her observations (supported by photographic evidence) of the drugs and paraphernalia found by authorities in Gamble's residence. The judge's comments were not fundamental error.

## E. Prosecutorial Misconduct

██ Finally, Gamble contends the prosecutor committed misconduct by misstating the law in his closing statement. Specifically, the prosecutor told the jury it could find Gamble guilty of trafficking in methamphetamine by manufacturing even if it only found that he had begun extracting pseudoephedrine and had not completed the process. When objected to, the court agreed the argument was improper but declined to instruct the jury, stating the jury instructions provided a proper statement of the law and that the jury had been instructed to disregard arguments or statements of counsel that were not based on evidence or the law.

Idaho Code Section 37–2732B(a)(3) states that "[a]ny person who knowingly manufactures *or attempts* to manufacture methamphetamine and/or amphetamine is guilty of a felony. . . ." (Emphasis added). However, in the information, Gamble was charged only with manufacturing methamphetamine with no reference to an "attempt" to do so. At trial, the state continued to pursue this theory, arguing exclusively that the evidence showed Gamble had manufactured methamphetamine in his residence. During his closing argument, Gamble contested the state's assertion that there was sufficient evidence to convict him of manufacturing, but essentially conceded that there was sufficient evidence of attempted manufacturing, explicitly saying that "the verdict . . . would have to be not guilty of the manufacturing but of at-

tempted manufacturing." On rebuttal, the state responded with the following argument:

Now, if you want to disregard the evidence of the smell, the strong odor there, the wet coffee filter, of the plastic bag with the lab trash in the kitchen, if you want to disregard that stuff, the meth in the house and the meth and the residue in the tubing, that's fine. You could probably even do it with this case and still consider the manufacturing charge because of Instruction No. 14. That's the definition of manufacture. And it tells you manufacture means the production, preparation, propagation, compounding, the conversion, or processing of a controlled substance, and includes extraction, directly or indirectly, from substance of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

So basically, it is telling you when you have a processing of a controlled substance and you have an extraction directly or indirectly from a substance of natural origin or basically, running the gamut here, when you have some sort of chemical process happening, you have manufacturing. And in that case you knew that was happening when the search warrant was executed because of the liquid pseudoephedrine below the colander containing all the pills so that processing was happening as it was there. That's the manufacturing process pursuant to [Instruction] 14, if you want to disregard all the other evidence he had.

Gamble objected, arguing the prosecutor's statements were contrary to the law in that they implied that even if the jury found only that Gamble had extracted pseudoephedrine, but had not completed the manufacturing process, it could still find him guilty of manufacturing methamphetamine. The court agreed, finding that to constitute "manufacturing" under the statute—as opposed to attempted manufacture—there had to be a "completed manufacture."

▮ Prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process.

*Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618, 630 (1987); *State v. Sanchez,* 142 Idaho 309, 318, 127 P.3d 212, 221 (Ct.App.2005). To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *Id.* The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87 (1982); *Sanchez,* 142 Idaho at 318, 127 P.3d at 221. The aim of due process is not the punishment of society for the misdeed of the prosecutor but avoidance of an unfair trial to the accused. *Id.*

We need not decide whether the prosecutor misstated the law, however, because even assuming he did, there was still overwhelming evidence suggesting that Gamble had gone beyond attempting to manufacture and had, in fact, completed the manufacture of methamphetamine. Gamble attempts to minimize the evidence pointing to a completed manufacture, arguing that in regard to the "main" evidence supporting a finding of a successful manufacture—the methamphetamine residue in the tubing—there was "no evidence that the tubing did not contain methamphetamine when it was brought into the house from somewhere else...." It is true that it was not directly proven the tube had not been brought into the house with methamphetamine already inside it, but the more logical inference, supported by a plethora of evidence found in the residence was that it was the result of a successfully completed manufacture of methamphetamine on the premises. Importantly, a significant amount of completed methamphetamine was found in various locations in the house. An officer who had helped to execute the search warrant on the house testified that there was a distinct odor permeating the air, which from his training and experience, he associated with the manufacture of methamphetamine. In addition, wet coffee filters with "wet sludge" that is consistent with the manufacture of methamphetamine were found in the trash, indicating recent manufacturing activity. Also, Detective Bradbury who was experienced in such investigations, testified

that she believed methamphetamine had been made on the premises in the near past given the methamphetamine residue that was found in the tubes. In short, there was no denial of due process and there was overwhelming evidence that methamphetamine had been manufactured in the house, such that any prosecutorial misstatement of the law would be harmless.

**F. Cumulative Error**

The cumulative error doctrine requires reversal of a conviction when there is an accumulation of irregularities, each of which by itself may be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process.[6] *Dunlap v. State*, 141 Idaho 50, 65–66, 106 P.3d 376, 391–92 (2004). In order to find cumulative error, this Court must conclude there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *Id.* at 66, 106 P.3d at 392. In this case, even if we assume alleged judicial and prosecutorial misconduct along with the allegedly erroneous use of Rule 404(b) evidence, together they did not amount to a denial of due pro-

cess requiring reversal. *See State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App.2004) (applying cumulative error doctrine to assumed error).

## III.

## CONCLUSION

We conclude that Gamble was given an opportunity to be heard on his request for substitute counsel, that joinder with Runkle's case was not improper, that denial of the motion for mistrial was correct, and that any misconduct by the prosecutor or judge or improper use of Rule 404(b) evidence was harmless error. Accordingly, the judgment of conviction is affirmed.

Judge LANSING and Judge PERRY concur.

---

**6.** Idaho Criminal Rule 52 requires that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."